**IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GEORGE CAVELLE,

Plaintiff,

v.

CHICAGO TRANSIT AUTHORITY and DORVAL CARTER,

Defendants.

Case No. 17-CV-5409
Magistrate Judge Mary M. Rowland

## REPORT AND RECOMMENDATION

Defendants seek sanctions against Plaintiff and his attorneys for pursuing a false claim of witness tampering against Defendants. For the reasons discussed below, this Court recommends that Defendants' Motion for Sanctions [77] be GRANTED IN PART.

### A. BACKGROUND

Plaintiff George Cavelle ("Cavelle" or "Plaintiff"), a former Chicago Transit Authority ("CTA") Chief Transit Operating Officer has a five count First Amended Complaint pending against the CTA and its President Dorval Carter ("Defendants"). Cavelle alleges that after he was forced to resign from the CTA, Defendants defamed him and interfered with his new job opportunity in Seattle. Cavelle claims tortious interference with business expectancy/prospective economic

advantage, tortious interference with contract, defamation per se, defamation per quod, and false light against both named Defendants.[1]

The present motion for sanctions has its origins in a February 6, 2019 email when plaintiff's counsel wrote the following to defense counsel:

> It has come to our attention that CTA has threated potential witnesses in this case with loss of pay and potentially more serious repercussions if they do not testify "on CTA's side". This constitutes blatant witness tampering, and it is unethical, sanctionable and actionable. We intend to issue discovery on these issues. We certainly would not accuse you or your firm of such egregious and unprofessional conduct without solid proof. Rather, we assume this was done by CTA agents without your knowledge, and thus wanted to advise you of what we believe is taking place within CTA.

(Dkt. 77-1, Ex. A). On February 19, 2019, the District Judge referred this case to the undersigned for discovery and settlement. (Dkt. 48). On March 7, 2019, this Court held a hearing on various discovery issues, including Defendants' motion (Dkt. 56) seeking information about Plaintiff's accusation of witness tampering against CTA. At the hearing, this Court stressed the seriousness of witness tampering but also the seriousness of making an unfounded witness tampering allegation. The Court conducted an evidentiary hearing on March 21, 2019. (Dkt. 65). Two witnesses testified, Cavelle and Mr. George Mendenhall ("Mendenhall"), the alleged victim of tampering. A third witness, the alleged tamperer ("Individual A"), was available but not called by either side to testify. (Dkt. 68).

Defendants argue that the evidentiary hearing showed there was no witness tampering and Cavelle and his attorneys should be sanctioned for pursuing and

[1] On July 2, 2019, the District Judge permitted Plaintiff to file his amended complaint. (Dkts. 73, 101). Plaintiff filed his First Amended Complaint on July 9, 2019. (Dkt. 102).

perpetuating a false claim of witness tampering. They ask the Court to dismiss the entire case with prejudice and for an award of fees and costs. In the alternative, Defendants request that the Court exclude the "Lookout Bulletin"[2] from evidence and dismiss defendant CTA with prejudice from the case. Plaintiff argues Defendants failed to meet their burden and their motion should be denied.

**B. LEGAL STANDARD**

In their motion, Defendants invoke both 28 U.S.C § 1927 and the Court's inherent power. "[Section 1927] allows a court to penalize a lawyer who 'multiplies the proceedings in any case unreasonably and vexatiously'…liability under §1927 is personal to the lawyer." *Cooke v. Jackson Nat'l Life Ins. Co.*, 919 F.3d 1024, 1029 (7th Cir. 2019). The purpose of Section 1927 "is to deter frivolous litigation and abusive practices by attorneys…and to ensure that those who create unnecessary costs also bear them." *Kapco v. C & O Enters.*, 886 F.2d 1485, 1491 (7th Cir. 1989) (internal citations and quotations omitted).

In addition, "[i]t has long been understood that federal judges have a common-law power (sometimes called an inherent power) to impose sanctions on parties that needlessly run up the costs of litigation." *Cooke,* 919 F.3d at 1027 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). This authority applies also to sanctions against attorneys. *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir. 1988). The inherent authority to sanction allows courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at

[2] The "Lookout Bulletin" is referred to as the "Wanted Poster" in Plaintiff's amended complaint and attached thereto as Exhibit A. (Dkt. 102, Ex. A).

43 (citation and quotation omitted). A court can "fashion an appropriate sanction for conduct which abuses the judicial process…dismissal of a lawsuit…is a particularly severe sanction..." *Id.* at 44–45. Before imposing sanctions a court must find that "the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). "Although part of a court's consideration should be on the impact or effect that the conduct had on the course of the litigation, there is no requirement that the district court find prejudice." *Fuery v. City of Chi.*, 900 F.3d 450, 464 (7th Cir. 2018).

Sanctions may be used both to reprimand and "deter future parties from trampling upon the integrity of the court." *Twyman v. S&M Auto Brokers, Inc.*, 748 F. App'x 705, 707 (7th Cir. 2019) (internal citation and quotations omitted). *See also Ramirez*, 845 F.3d at 776 (courts "may impose appropriate sanctions to penalize and discourage misconduct."). "'Bad faith' or 'vexatious' conduct, in both the inherent power and § 1927 contexts, does not require subjective bad intent; certain types of reckless conduct can suffice." *Egan v. Huntington Copper Moody & Maguire, Inc.*, 2015 U.S. Dist. LEXIS 47143, at *14 (N.D. Ill. Apr. 10, 2015).

**C. ANALYSIS**

The Court finds that Plaintiff and his attorneys wrongfully pursued an unsubstantiated claim of witness tampering. Their conduct cost this Court and Defendants time and resources. It slowed resolution of the case. Their conduct also infringed Defendants' ability to investigate a serious accusation against them and infringed defense counsels' ability to defend their clients on the merits. Plaintiff and

his counsel's conduct, however, does not warrant the harsh penalty of dismissal of the entire case with prejudice or dismissal of CTA from the case. This Court recommends a sanction of (1) attorneys' fees and costs; and (2) exclusion of the Lookout Bulletin from evidence.

***1. Evidentiary Hearing Findings***

The evidentiary hearing revealed no evidence that Defendants or any CTA employee attempted to or succeeded in "keep[ing] witnesses from testifying." *United States v. Rand*, 482 F.3d 943, 950 (7th Cir. 2007). To the contrary, the evidence showed that no witness tampering occurred. The evidence consisted of the testimonies of Cavelle and Mendenhall, and Defendants' sixteen exhibits. Mendenhall is a CTA union rail mechanic and long-time friend of Cavelle. Plaintiff disclosed Mendenhall as a witness in this case because of his knowledge of the Lookout Bulletin.

The Court found Mendenhall to be a very credible witness. He was consistent and forthright, and the exhibits admitted by Defendants were consistent with his testimony. He was understandably anxious because he did not know the reason he was being called to testify until the hearing began, and he had been spending significant amounts of time at the hospital with his newborn baby who had been in intensive care for a month. By contrast, the Court did not find Cavelle to be credible. His testimony was at times inconsistent and exaggerated, unsupported by any documentary evidence, and contradicted by Mendenhall.

Both Cavelle and Mendenhall testified that they had a phone conversation in early February 2019 about this case, but they differed about what was said. Cavelle testified that Mendenhall "sounded stressed" and said that "[CTA's] lawyers are going to call" him and he had to report to CTA and "may be quarantined down there for a couple of days and I don't know how I'm going to get paid for this." (Mar. 21 Tr. at 25). Cavelle then said to Mendenhall, "what are you talking about; you'll get paid for this." (*Id*. at 26). According to Cavelle, Mendenhall responded "that's not what they're telling me. They're telling me if it's for CTA, the lawyers will handle it; but if it's not, I may have to make up the time." (*Id.*). Cavelle called his lawyer to report what Mendenhall said, and then called Mendenhall back to ask who from the CTA called him. According to Cavelle, Mendenhall said Individual A. (*Id*. at 26–28).

For his part, Mendenhall testified that no one from the CTA threatened him and he never told anyone that he was threatened in this case. Mendenhall testified that during the early February 2019 conversation, he "vented" to Cavelle about being involved in the litigation.  His wife was having a difficult pregnancy and he did not need any added stress. Mendenhall explained that when you perform work for CTA outside your regular duties, it can be challenging to get paid for that time spent. He referred to it as "chasing my paycheck." He testified that when he spoke to Cavelle in early February 2019 he vented "we got enough going on. I don't need to chase my paycheck." (Mar. 21 Tr. at 77–79). Mendenhall said that Cavelle responded, "that's typical CTA…chasing your money and all that." (*Id*. at 84). But Mendenhall was clear that "no one has threatened me from the CTA." (*Id*. at 88, 92). He said that

Individual A had been "nothing but respectful and professional to me", never threatened him, and Mendenhall never told anyone, including Cavelle, that he was threatened about his testimony in this case. (*Id*. at 88–90).

Also, while Cavelle testified that Mendenhall said that CTA counsel told him they would need his financial records and his wife's financial records (*id*. at 31), Mendenhall specifically said that did not happen. (*Id*. at 100). Cavelle's testimony on cross examination contradicted his earlier testimony: he was asked, "so Mr. Mendenhall never mentioned in that phone call that anyone at the CTA told him he would not be paid [for time testifying]?" Cavelle answered "No." (*Id*. at 41).

Defendants' exhibits, admitted into evidence without objection (Mar. 21 Tr. at 114–15), showed no evidence of witness tampering. The exhibits contain mundane emails about scheduling of Mendenhall's interview with CTA outside counsel, show Mendenhall took steps to ensure he would be paid for his time, and also contain paystubs showing that CTA paid him for the two times he was interviewed by CTA outside counsel. They corroborate Mendenhall's testimony.

Cavelle, on the other hand, did not offer any documentary evidence to corroborate his testimony or claim of witness tampering. In fact, when asked at the hearing whether he had any text messages or emails with Mendenhall related to the issues Cavelle testified about, he answered, "I deleted them all." (Mar. 21 Tr. at 53). This answer seriously damaged Cavelle's credibility as a witness.[3]

[3] If there were such emails or texts and Cavelle in fact deleted them, knowing as he did that this matter had been raised with the Court, such conduct could constitute spoliation of evidence. As the Court finds this answer lacking in credibility, the notion that any such texts or emails ever in fact existed is doubtful.

In his response brief, Plaintiff concedes that "the evidence…does not rise to the level of a provable case of witness tampering." (Dkt. 93 at 21). At the same time, he argues that the "circumstantial evidence" "suggests that something untoward may have happened," which "mitigates toward tampering not sanctions against Plaintiff or Plaintiff's counsel." (*Id*. at 18). It is unpersuasive, to say the least, for Plaintiff to concede on one hand that he could not prove witness tampering and request, on the other, that the Court read into the "circumstantial evidence" to find it "mitigates toward tampering".[4]

This Court found no evidence, direct or circumstantial, of witness tampering. Plaintiff argues that CTA's General Counsel's statements about the payment reimbursement process conflicted with Mendenhall's, and therefore she might have made a "false statement" to the Court. (Dkt. 93 at 18–19). Plaintiff also argues that the emails in Defendants' exhibits "suggest that Individual A said something to Mr. Mendenhall regarding compensation." (*Id*. at 19–21). There is no evidence for either of these assertions. As Defendants point out, Plaintiff's counsel had the opportunity to question Individual A under oath at the hearing but did not. (Dkt. 94 at 6). These arguments serve instead as further examples of Plaintiff making unsupported claims against Defendants. It is why sanctions are proper in this case.

[4] In his response brief, Plaintiff focuses on Mendenhall's stated fear of "retaliation." (Tr. at 87). When read in context and as the Court heard them live at the hearing, Mendenhall's statements showed anxiety about being involved as a witness in this case generally and fears about the impact on his job security in light of the very stressful situation involving the health of his wife and baby. When asked if these concerns came from anything anyone at CTA did or said, Mendenhall was clear that they did not.

### *2. Sanctionable Conduct*

Witness tampering is serious. *See Emerson v. Dart*, 900 F.3d 469, 473 (7th Cir. 2018) ("we have long held that witness tampering is among the most grave abuses of the judicial process.") (internal citation and quotations omitted); *Ramirez*, 845 F.3d 772 (affirming sanction of dismissal of case with prejudice for witness tampering). Accusing a party of witness tampering is also serious. The circumstances of this case justify sanctions, but not the severe sanctions Defendants request. Both Cavelle and his counsel should face sanctions for exaggerating the alleged witness tampering, refusing to provide Defendants with *any* information despite CTA's repeated requests, needlessly perpetuating the accusation by not assisting the CTA to properly investigate it, failing to withdraw the allegation despite multiple opportunities to do so, and persisting with baseless allegations after the hearing.

Plaintiff's counsel accused CTA of witness tampering on February 6. Defense counsel promptly on two separate occasions requested more information. (Mot., Exs. B and C). Having received no response, Defendants served a formal document request on February 8. (*Id.*, Ex. D). On February 18, during a meet and confer, Plaintiff's counsel reported that he had evidence of witness tampering but still declined to disclose it. (Dkt. 56 at 3).

On February 19, the parties appeared before the District Judge where defense counsel informed the District Judge of the witness tampering allegation. In a February 22 email, Plaintiff's counsel wrote the following to defense counsel:

> [W]ith respect to us putting you on notice that CTA employees may be conditioning adverse employment action on the testimony of witnesses in this case I am confident you have looked at the standard necessary in order for us to seek sanctions against CTA for such behavior…[W]e have not brought a motion for such relief…Our goal was to put CTA on notice of the behavior and prevail upon you to advise your client to insure that actions that could even be interpreted as manipulative do not occur.[5] As of now, we do not intend to proceed further with the matter unless we hear further reports of untoward conduct…

(Dkt. 56-1 at 42–43). While Plaintiff decided not to file a motion, Defendants filed a motion for protective order. (Dkt. 56). That motion was set for hearing before this Court on March 7. Although it had been a month since Plaintiff first accused CTA of witness tampering, Plaintiff still did not provide any information until ordered by the Court at the March 7th hearing. Plaintiff then identified the alleged victim of tampering and alleged tamperer.

Thus before the evidentiary hearing began on March 21st, Plaintiff had numerous opportunities to provide information to CTA so it could conduct an investigation. On March 14 when Plaintiff received a copy of Defendant's evidentiary hearing exhibits, containing mundane scheduling emails and confirmation that CTA properly paid Mendenhall for his time on this case, Plaintiff could have moved to cancel or hold in abeyance the evidentiary hearing. And finally, at the end of the evidentiary hearing, having heard Mendenhall testify unequivocally that: (1) "no one has threatened me from the CTA;" (2) Individual A had been "nothing but respectful and professional to me;" and (3) he, Mendenhall,

---

[5] The Court is at a loss as to how defense counsel was to address this serious allegation without some further information, particularly with the number of witnesses identified in the Rule 26(a) disclosures in this case. At the March 7th hearing, Plaintiff's stated that the parties had identified "close to 50 [26(a)] witnesses." (Mar. 7 Tr. at 39).

never told anyone, including Cavelle, that he was threatened about his testimony in this case, Plaintiff could have withdrawn his witness tampering claim.

***3. Dismissal of Entire Case Not Warranted***

The Court first addresses Defendants' request to dismiss the entire case with prejudice. That "particularly severe" sanction is not proportional here. *Chambers*, 501 U.S. at 45. *See Montano v. City of Chi.*, 535 F.3d 558, 566 n.3 (7th Cir. 2008) ("the punishment must fit the crime"). Dismissal with prejudice "must be infrequently resorted to…[It] is a harsh sanction which should usually be employed only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing…Absent those circumstances, the careful exercise of judicial discretion requires that a district court consider less severe sanctions." *Barnhill v. United States,* 11 F.3d 1360, 1367 (7th Cir. 1993) (internal citations and quotations omitted) (reversing sanction of dismissal).

This is not an extreme case. While a finding of witness tampering can lead to dismissal (*Ramirez*, 845 F.3d 772), Defendants have not cited any case law where outright dismissal resulted from a finding that witness tampering did *not* occur and a party wrongfully pursued the claim. A review of cases affirming dismissal establishes that this case does not rise to that level. *See e.g. Dotson v. Bravo*, 321 F.3d 663, 668 (7th Cir. 2003) (describing long history of egregious litigation conduct including filing a civil rights claim under a false name); *Secrease v. W. & S. Life Ins.*

*Co.*, 800 F.3d 397 (7th Cir. 2015) (plaintiff tried to defraud the court by asking for relief based on falsified evidence).[6]

Here Defendants contend that Cavelle fabricated the witness tampering claim, but do not go so far as to accuse Cavelle or his attorneys of perjury. "In the federal criminal context, perjury is defined as 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *Montano*, 535 F.3d at 564. Defendants rely on *Montano,* but there the Seventh Circuit *reversed* a sanction of dismissal with prejudice, stating that the district court misinterpreted inconsistencies in testimony as conspiracy among the plaintiffs to fabricate testimony. The inconsistencies "provide fertile ground for vigorous impeachment," and "certainly bear on Ruiz's credibility…but in the absence of other evidence of a deliberate falsehood do not permit the inference that Ruiz committed perjury." *Id*. at 564–65. Similar to *Montano*, there is no evidence in this case of perjury.

Further, there is no direct evidence to support Defendants' suggestions about Plaintiff's motives for the conduct, "to nullify Mr. Mendenhall's testimony." (Dkt. 77 at 22). The Court has found no evidence of bad intent. *See Egan,* 2015 U.S. Dist. LEXIS 47143, at *14 (subjective bad intent not required for sanctions).

[6] In *Secrease,* 800 F.3d 397, following an evidentiary hearing, the district court found that plaintiff deliberately submitted a falsified contract with the intention to mislead the court. This Court, while certainly finding Plaintiff's and his counsel's conduct sanctionable, cannot find that they deliberately falsified evidence with the intent to defraud the Court.

***4. Sanctions Warranted***

Although dismissal is not appropriate, sanctions are warranted to penalize Cavelle and his counsel, to deter similar conduct in the future, and compensate Defendants for unnecessary costs. This Court believes the inherent sanction authority is the appropriate vehicle because this case warrants both evidentiary and monetary sanctions, and the latter should be apportioned equally between Plaintiff and his counsel. *See Cooke*, 919 F.3d at 1029 (Section 1927 fees and costs cannot be assessed against the client); *Chambers*, 501 U.S. at 46 ("whereas [statutory and rule-based] mechanisms reach[] only certain individuals or conduct, the inherent power extends to a full range of litigation abuses.").

The conduct in this case goes beyond ordinary negligence. It was objectively unreasonable and reckless, fitting the definition of bad faith for purposes of a sanction under the court's inherent power. "Bad faith" has similar meanings in the context of Section 1927 and the inherent sanction power. "Courts have used phrases such as harassment, unnecessary delay, needless increase in the cost of litigation, willful disobedience, and recklessly making a frivolous claim…when analyzing the meaning of 'unreasonably and vexatiously' in the similar context of 28 U.S.C. § 1927, that the term 'bad faith' has both a subjective and objective meaning, and we often treat reckless and intentional conduct equally." *Mach v. Will County Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009). "Bad faith can be 'recklessly making a frivolous claim.'" *Egan v. Pineda*, 808 F.3d 1180, 1180 (7th Cir. 2015) (quoting *Mach*, 580 F.3d at 501). The bad faith standard "has an objective component, and extremely

negligent conduct, like reckless and indifferent conduct, satisfies this standard." *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184–85 (7th Cir. 1992).

Plaintiff's counsel reacted to his client's report of his conversation with Mendenhall by notifying defense counsel of CTA's "blatant witness tampering." Plaintiff's counsel argues that he could not investigate the allegation because he could not speak to CTA employee Mendenhall. However this does not explain or excuse Plaintiff's counsel's haste in sending such a serious accusation based on a second-hand report of what Mendenhall allegedly said. It does not explain why Plaintiff's counsel accused CTA of tampering with multiple individuals.[7] It does not explain Plaintiff's refusal to provide Defendants with any information for more than a month until ordered to do so or Plaintiff's refusal to work with Defendants to try to resolve the issue without Court intervention. A probing conversation between Plaintiff's counsel and his client early on may have avoided this unfortunate event.

Plaintiff argues that there was no bad faith because he did not ask for the evidentiary hearing and he was "willing to move past it." (Dkt 93 at 1). It is true that Plaintiff did not request the evidentiary hearing. But Plaintiff also did not withdraw the witness tampering allegation. Given the seriousness of the allegation, which Plaintiff's counsel himself stressed in his February 6 email and which both defense counsel and this Court reiterated, and Plaintiff's failure to withdraw the allegation, an evidentiary hearing was unavoidable. And as discussed, Plaintiff's

[7] Compare Plaintiff's counsel's email, "…CTA has threated potential witnesses…" (Dkt. 77-1, Ex. A) to Cavelle's testimony that he was not aware of any witnesses other than Mendenhall who were allegedly tampered with in this case. (Mar. 21 Tr. at 44).

response brief to the motion provides more reason to impose sanctions. *See Barnhill*, 11 F.3d at 1368 (courts "consider the egregiousness of the conduct in question in relation to all aspects of the judicial process.").

The Court believes responsibility should fall to both Plaintiff and his counsel. Based on the record and the testimony at the hearing, this Court concludes that Cavelle, in reporting his conversation with Mendenhall to his attorney, misrepresented the conversation. Based only on these brief phone conversations, Cavelle's counsel accused CTA of "blatant witness tampering." Plaintiff's counsel argues that he had a "good faith" basis for making the witness tampering accusation based on his conversation with Cavelle. But whether an attorney acted in good faith "is not material if his conduct was objectively unreasonable." *Kapco*, 886 F.2d at 1494. It was objectively unreasonable for Plaintiff's counsel to make such a serious allegation with so little information and to continue with the allegation for months, well aware of the time and resources being spent and potential consequences.[8]

Accordingly, under the Court's inherent authority, the Court recommends an award of reasonable attorneys' fees and costs to compensate Defendants for the March 21st evidentiary hearing and the briefing on Defendants' motion for sanctions. Because Plaintiff did not specifically request the evidentiary hearing, but should still bear responsibility for the reasons stated above, the Court recommends

[8] *See Fuery*, 900 F.3d at 467 ("The clients are principals, the attorney is an agent, and under the law of agency the principal is bound by his chosen agent's deeds.") (citations and quotations omitted).

that Plaintiff and his counsel be required to pay the fees and costs for the evidentiary hearing and briefing on the motion for sanctions. The Court does not recommend including any other fees or costs such as those associated with the Defendants' motion for protective order. *See Montano,* 535 F.3d at 563 (a sanction should be "proportionate to the gravity of the offense."); *Mach*, 580 F.3d at 496, 501 (affirming order requiring plaintiff to pay eighty-three percent of opposing party's fees because plaintiff litigated part but not entire case in bad faith).

In addition, the Court recommends excluding the Lookout Bulletin from evidence as a sanction against Plaintiff. This is a serious sanction and will impact certain counts in Plaintiff's amended complaint, but the sanctionable conduct here was serious. The Court believes this is an appropriate sanction since Mendenhall's testimony is tied to the Lookout Bulletin. Defendants argue that based on Plaintiff's April 2019 discovery responses (Mot. Ex. U), exclusion of the Lookout Bulletin should result in dismissal with prejudice of CTA. The Court does not agree.[9] The parties have not briefed the question of all the evidence of defamation Plaintiff may have against CTA. This is a matter that should be raised with the district court judge pre-trial or at the close of Plaintiff's case.[10]

---

[9] The Court also does not recommend dismissing CTA from the case entirely because it believes the present sanction is sufficient, the tortious interference claims against CTA do not depend on the Lookout Bulletin, and it is not clear at this stage that the defamation and false light claims against CTA are entirely dependent on the Lookout Bulletin.

[10] *See* Northern District of Illinois General Order 18-0015, dated 6/27/2018, regarding referrals to Magistrate Judges.

**D. CONCLUSION**

For the reasons discussed in this Report and Recommendation, this Court recommends that Defendants' Motion for Sanctions [77] be GRANTED IN PART. The Court recommends:

- an award of Defendants' reasonable attorneys' fees and costs for the evidentiary hearing and briefing on the motion for sanctions. Plaintiff's counsel should be responsible for 50% of this amount and Plaintiff responsible for the other 50%.
- the Lookout Bulletin should be excluded from evidence in this case.

Specific written objections to this Report and Recommendation may be served and filed within 14 days from the date that this Order is served. *See* Fed. R. Civ. P. 72. Failure to file objections within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the Report and Recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995). A status hearing is set for August 6, 2019 at 9:30am.

E N T E R:

Dated: July 10, 2019

Mary M Rowland

MARY M. ROWLAND
United States Magistrate Judge