```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION


GEORGE CAVELLE,                         )  No. 17 C 5409
                                        )
              Plaintiff,                )
                                        )
         vs.                            )  Chicago, Illinois
                                        )
CHICAGO TRANSIT AUTHORITY, DORVAL       )
R. CARTER, JR., individually, JOHN      )
DOE 1, and JOHN DOE 2,                  )
                                        )  July 9, 2019
              Defendants.               )  9:51 a.m.


                    TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HON. MARY M. ROWLAND, MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:    MR. ROBERT D. SWEENEY
                      Sweeney & Scharkey LLC,
                      111 West Washington Street, Suite 1160,
                      Chicago, Illinois  60602


For the Defendants:   MS. ELIZABETH E. BABBITT
                      Taft, Stettinius & Hollister LLP,
                      111 East Wacker Drive, Suite 2800,
                      Chicago, Illinois  60601


ALSO PRESENT:         MR. ADRIAN GONZALEZ



                         PATRICK J. MULLEN
                       Official Court Reporter
                     United States District Court
                 219 South Dearborn Street, Room 1412
                       Chicago, Illinois  60604
                           (312) 435-5565
```

1           THE CLERK:  17 C 5409, Cavelle versus Chicago Transit
2  Authority.
3           MS. BABBITT:  Good morning, Your Honor.  Elizabeth
4  Babbitt, B-a-b-b-i-t-t, on behalf of defendants.
5           MR. SWEENEY:  Robert Sweeney, S-w-e-e-n-e-y, on behalf
6  of plaintiff.
7           THE COURT:  Good morning.
8           MS. BABBITT:  And, Your Honor, I also have appearing
9  with us today Mr. Adrian Gonzalez.  He's one of the summer
10 associates, and he'll be observing the hearing today.
11          THE COURT:  Oh, welcome to the court.
12          Okay.  We have a motion pending?
13          MR. SWEENEY:  We do.
14          THE COURT:  What's happening with the web page
15 information, Facebook, et cetera?
16          MS. BABBITT:  Well, I think to give you an update,
17 Your Honor, and sort of just to set the table, the discovery
18 initially was issued in December and February of this year.
19 You issued an order at the hearing that we had on March 7th
20 regarding the social media.
21          THE COURT:  Yes.
22          MS. BABBITT:  We attempted to meet and confer, as you
23 probably saw in the exhibits attached to the motion, and after
24 sending a detailed letter May 20th we didn't hear anything.  So
25 we filed our motion on June 25th.  On June -- on the evening of

1    June 25th, we got an e-mail from plaintiff's counsel saying
2    that they would be delivering a thumb drive to us, and the
3    following day they sent us a thumb drive.  The thumb drive was
4    screenshots, it appeared, that Mr. Cavelle had taken of his
5    Facebook posts.
6              THE COURT:  Okay.
7              MS. BABBITT:  The problem with that is, one, it cut
8    off some of the posts.  It cut off some of the comments.  I
9    have examples if you wanted to see them.  So we issued another
10   note to Mr. Sweeney and again laid out the steps that we had
11   identified to get the materials from Facebook from its own
12   website.
13             Then yesterday at about 4:00 p.m., Mr. Sweeney sent me
14   another e-mail letting me know that a thumb drive would be
15   arriving last night with more materials.  So we received the
16   thumb drive.  You know, we haven't had any opportunity and
17   don't know at all if it's complete or not.
18             THE COURT:  Okay.
19             MR. SWEENEY:  So the screenshots are exactly -- it's
20   not someone taking a thing.  It's a screenshot of all posts for
21   the relevant time period.  To that point, you know, when they
22   filed their motion we had gone back and forth about what was
23   going to be done and how it was going to be done.  The last
24   thing I said was that we might need assistance because I don't
25   think the way that we're getting this done is working.  Counsel

1  sent her e-mail saying this is how you should do it, which she
2  had said before which didn't work.
3  　　　　　We had done what we did, which was to produce
4  essentially every post.  There's overlap, so certain things
5  might -- you might see part of a string here and then you might
6  see part of it again in the next screenshot, but you have the
7  entirety, all images from his Facebook for the relevant period.
8  　　　　　THE COURT:  Are we just talking about Facebook?
9  　　　　　MR. SWEENEY:  Yes.
10 　　　　　THE COURT:  Okay.
11 　　　　　MR. SWEENEY:  So yesterday we did send over exactly
12 what they want.  I mean, we contacted Facebook, and we figured
13 out what the issue was.  Mr. Cavelle needed to do it himself as
14 opposed to someone else.  So we got his permission.  They then
15 got sent to us to get the six-digit codes every time that you
16 try to view something or do something from an unfamiliar
17 computer, and we provided it to them.  So they've got -- they
18 had everything in a form I don't think they liked as much the
19 day after they filed their motion, and now they have everything
20 in the form that they asked for.
21 　　　　　THE COURT:  Okay.  So it's presumably on this thumb
22 drive, and you just haven't had a chance to look at it.
23 　　　　　MS. BABBITT:  Yeah.  Just to clarify, Your Honor,
24 Mr. Sweeney described what happened after we filed our second
25 motion with respect to the screen grabs that he sent.  I can

1 show you examples, but there's posts where you can see that
2 things just cut off and we're not able to find sort of the
3 missing half of that post.
4 　　　　　So, you know, taking Mr. Cavelle and Mr. Sweeney at
5 their word that we have everything is sort of difficult when it
6 seems self-evident that those posts were cut off. I can't say
7 obviously what this new thumb drive contains, as we've just
8 received it last night.
9 　　　　　THE COURT: Okay.
10 　　　　　MR. SWEENEY: So our point was that when you see the
11 screen, yeah, half his head is cut off, but on the next one
12 then you'll see his full head.
13 　　　　　THE COURT: She's telling me that the next one doesn't
14 have the other half of the head.
15 　　　　　MS. BABBITT: Yeah, some of them are missing.
16 　　　　　MR. SWEENEY: Well, it wouldn't have half a head,
17 though. It will have his full head, but anyway --
18 　　　　　THE COURT: Well, she's telling me that isn't true,
19 but let's try to move on. So hopefully this new thumb drive --
20 so the new thumb drive goes through the process that Facebook
21 says one should go through to download.
22 　　　　　MR. SWEENEY: The practice that they asked us to
23 follow, yes.
24 　　　　　THE COURT: Yes.
25 　　　　　MR. SWEENEY: Yes, we did it.

1  THE COURT: Okay. So hopefully that will have worked.
2  So I'm going to hold this motion in abeyance, and I'm going to
3  ask that you call my office by Friday and tell me that I can
4  just strike this motion. Okay? That will give you the rest of
5  the week to look at the thumb drive and tell me that I don't
6  need to rule on this motion.
7  MS. BABBITT: Yes, Your Honor. Your Honor, I would
8  mention that in our motion we also requested reasonable
9  attorney's fees.
10  THE COURT: Yes, and I'm not going to do that.
11  MS. BABBITT: Okay.
12  THE COURT: Okay. Now, you're waiting for a ruling
13  from me. You might get it today, but you'll certainly get it
14  this week. It's almost ready. After that and aside from that,
15  what else needs to happen? I saw some reference in an exhibit
16  that I was looking at here about deposing the plaintiff. So is
17  that happening? Does that need to happen? What else needs to
18  happen?
19  MR. SWEENEY: There were, I believe --
20  THE COURT: And that might be dated because I was
21  looking at, you know, the e-mails going back and forth.
22  MR. SWEENEY: So originally the defendants requested
23  to use their additional hour of time many months ago when we
24  were in front of Judge Dow, and subsequently that amount of
25  time has grown. Originally I suggested --

1 THE COURT: Grown from an hour?

2 MR. SWEENEY: Yeah.

3 THE COURT: Okay.

4 MR. SWEENEY: So they took -- well, we weren't going
5 to fight over the hour. Our math on the time was different,
6 but so be it. We originally were going to have them take an
7 hour of Mr. Cavelle's deposition. I said there could be issues
8 with logistics. He's down in Florida. They said we can do
9 this thing with, you know, sort of a virtual camera, whatever.
10 I was like, yeah, of course, we can do that. So their
11 suggestion was that we do the time and that Mr. Cavelle go
12 somewhere in Florida and we'll be somewhere here and hook up.

13 THE COURT: Sure.

14 MR. SWEENEY: That expanded as I think the rhetoric
15 between the parties got a little more heated. At some point,
16 they wanted -- I haven't documented this exactly -- two hours,
17 three hours. I think now maybe the last request was like four
18 hours and they want him to come to Chicago for it.

19 MS. BABBITT: So just to interject because I can
20 probably shortcut this, defendants aren't intending on taking
21 the remainder of Mr. Cavelle's deposition at this time provided
22 that we get the complete files that we were looking for in this
23 discovery request and that that is authenticated. With respect
24 to --

25 THE COURT: Did you say you're not going to depose

1 him?
2 MS. BABBITT: We're not going to do that.
3 THE COURT: Okay.
4 MR. SWEENEY: Great.
5 MS. BABBITT: So the other discovery, I don't know if
6 there would be any oral necessary. There may be some written.
7 It would depend on the new claim and the new allegations that
8 may be added.
9 THE COURT: Right, right.
10 MS. BABBITT: So that is something that's --
11 THE COURT: So that's what's outstanding.
12 MS. BABBITT: Correct.
13 THE COURT: Okay.
14 MS. BABBITT: And plaintiff has represented that
15 plaintiff doesn't require any discovery with respect to that.
16 THE COURT: Okay.
17 MS. BABBITT: Defendants are reserving the right to
18 determine if that claim and those allegations go forward to
19 pursue that.
20 THE COURT: Okay.
21 MR. SWEENEY: Then we also had a request for the
22 deposition of Jim Keating, who is the head of security.
23 THE COURT: Okay.
24 MR. SWEENEY: That one was still outstanding.
25 THE COURT: Okay.

1         MS. BABBITT: And we tried to set that up for weeks
2 and didn't hear back. They never pursued it, and our
3 understanding was that was no longer going to be taken.
4         THE COURT: Okay.
5         MS. BABBITT: Discovery closed. They never followed
6 up with us to schedule it.
7         THE COURT: Okay.
8         MR. SWEENEY: All of the scheduling was done after.
9 It was done with the understanding that discovery was closed.
10 They were going to take Cavelle and any follow-up they were
11 going to do, and we were going to take Keating.
12         THE COURT: Okay. So right now, defendants' only
13 outstanding discovery has to do with this new claim which is a
14 false light claim, which as I understand it is very close to a
15 defamation claim. I've never heard of false light, but it's
16 good to learn new things. You still want to take Mr. Keating.
17 You still want to do that.
18         MR. SWEENEY: Yes.
19         THE COURT: Okay. Are you objecting to that because
20 it's too late?
21         MS. BABBITT: We would object to that, Your Honor,
22 yes.
23         THE COURT: Okay. Tell me this. Plaintiff has been
24 allowed to file this amended complaint, and it's only amended
25 by adding this new count, right? But it's kind of tentative,

1 depending on the sanctions motion?

2 MR. SWEENEY: It adds --

3 MS. BABBITT: There's new allegations that are
4 included in the complaint.

5 MR. SWEENEY: Well, what it does --

6 MS. BABBITT: Then Judge Dow at the hearing last week,
7 rather than have defendants file a responsive pleading, he was
8 holding that in abeyance pending Your Honor's ruling on the
9 sanctions motion because potentially the sanctions motion could
10 have disposed of the case. So he was waiting to hear. We had
11 requested dismissal with prejudice of the case. He anticipated
12 that we'd be back before him and he'd set a briefing schedule
13 on that.

14 THE COURT: Okay.

15 MR. SWEENEY: So in response to your question, what it
16 does is it adds an e-mail which was a communication between
17 defendant Carter --

18 THE COURT: I see.

19 MR. SWEENEY: -- and the former president of the CTA
20 who is no longer associated with the CTA that we did not have
21 before.

22 THE COURT: I see.

23 MR. SWEENEY: It wasn't publicly available.

24 THE COURT: I see.

25 MR. SWEENEY: So it adds, I guess, an additional

1  defamation or defamatory act.
2          THE COURT:  I see.
3          MR. SWEENEY:  And then also --
4          THE COURT:  By Mr. Carter.
5          MR. SWEENEY:  Yes.
6          THE COURT:  Defaming the plaintiff to this other
7  person.
8          MR. SWEENEY:  Right, right.
9          THE COURT:  The person is not named as a defendant,
10 but he's an outside third party, and you allege that Mr. Carter
11 defamed your client to him --
12         MR. SWEENEY:  Right.
13         THE COURT:  -- via this e-mail.
14         MR. SWEENEY:  Right.  So it adds that.
15         THE COURT:  Do you allege that the CTA defamed him,
16 that the CTA was part of this act of defamation via this
17 e-mail?
18         MR. SWEENEY:  I believe it was done in his official
19 capacity as president, so in that sense, yes.
20         THE COURT:  And what does the e-mail say?
21         MR. SWEENEY:  Among other things, it says that he let
22 go of the operations officer for stealing $6100 from the
23 holiday train fund today.  Mr. Kruesi, who is a former CTA
24 president, comes back and offers some insight about whether
25 people who commit one crime have likely committed others.

Case: 1:17-cv-05409 Document #: 107 Filed: 07/19/19 Page 12 of 15 PageID #:1767

12

1           THE COURT:  So your guy is the guy who's let go for
2   stealing the train fund.
3           MR. SWEENEY:  Yes.
4           THE COURT:  Okay.
5           MR. SWEENEY:  Then Mr. Carter comes back in a
6   subsequent e-mail in that e-mail chain and says:  Yeah, the guy
7   is a wreck.  He's getting divorced.  His friends are going to
8   do an intervention.
9           THE COURT:  Okay.
10          MR. SWEENEY:  A host of things.
11          THE COURT:  So you think this e-mail is maligning your
12  client.
13          MR. SWEENEY:  For sure.
14          THE COURT:  Okay.  So thanks for that because I've
15  read the amended complaint but I haven't parsed it the way I'm
16  sure you all have.
17          MR. SWEENEY:  Then just to add my two cents of what
18  happened in front of Judge Dow, Judge Dow was going to have us
19  go ahead with the briefing schedule.  Counsel pointed out that
20  one of the elements of relief they ask for in their motion for
21  sanctions is that the case be dismissed with prejudice, and if
22  this Court was so inclined to do that then there would be no
23  point to going ahead with the motion on the amended complaint.
24  So Judge Dow said:  Well, why don't we see what happens.
25          THE COURT:  So, you know, if I were to do something

1 like that, of course, plaintiff would have the right to take
2 that up with Judge Dow.
3     MS. BABBITT: Right.
4     THE COURT: So then that would be a whole briefing in
5 front of Judge Dow but on a different matter than just a motion
6 to dismiss.
7     MS. BABBITT: Right, and Judge Dow was aware of that
8 being a recommendation.
9     THE COURT: Right. Okay. So I'm just trying to
10 figure it out. One, I want to figure out, you know, closing
11 discovery in the midst of the sanctions thing and then, you
12 know, being mindful of what Judge Dow has going on, although I
13 guess his thing is kind of on the back burner in terms of the
14 amended complaint.
15     Dare I ask, and I suppose I shouldn't, but is there
16 any room -- I mean, I guess I know the answer to this. Is
17 there any room in this case for -- you know, I know I have to
18 issue my ruling first, and I will. I'm happy to, but is there
19 anybody talking about resolving the case?
20     So I'm going to issue my ruling, and then people are
21 going to have feelings about that and you're all going to have
22 some time to take a breath about that. But then before we go
23 further, which I tried to get everyone to take a breath before
24 we had the hearing because I'm all about people taking breaths,
25 but is there any room then for people to come in here and try

1  to resolve the case? I think there'd be strong feelings on
2  both sides, and it would be a very, very difficult case to
3  resolve. I know that, and I don't know that anybody could
4  really talk seriously about this before you see my ruling.
5      But what I would suggest, what I would suggest is that
6  I issue my ruling, and then I'm going to have a status. I'm
7  going to be out the last week of July. I'm going to have a
8  status in early August. Everybody can have some time to digest
9  the ruling, and then people can come in and say, given what
10 happened, whether you're going to go to Judge Dow, not go to
11 Judge Dow, you know, whatever, I don't care.
12     Would it be a moment -- we can hold off on whether
13 we're going to depose Mr. Keating, whatever his name is. He's
14 not going anywhere. I'm probably going to allow that
15 deposition because who cares at this point. One more
16 deposition isn't going to kill anybody. Are we going to try to
17 get this resolved before? You know, whatever, one more count,
18 who cares. They're going to move for summary judgment. You're
19 going to look at my ruling. Are we going to try to get this
20 resolved?
21     Okay. So just everybody, everybody think about that.
22 I'm going to see you in early August, and you're going to think
23 about that. Okay? So that's all I'm going to say about it
24 today. You're going to call me by Friday and say if we're done
25 with this motion. That's all I want to know by Friday.

1   MS. BABBITT:  Yes.

2   THE COURT:  You'll get my ruling by Friday.  Everybody
3   take a breath, and I'm going to see you in August and we're
4   going to see if there's any room in this very emotionally
5   charged situation to put this behind your clients.  Not the
6   lawyers, you all got to put your egos and all your emotion
7   aside.  Is there room to put this behind your clients?  I would
8   be happy to help or try to help make that happen.  That would
9   be my advice for what it's worth, and you'll get my ruling
10  today or tomorrow.  Okay?

11  MS. BABBITT:  Thank you very much.

12  THE COURT:  So everybody have a good day.

13  MS. BABBITT:  You too.

14  MR. SWEENEY:  You'll just give us a status date?

15  THE COURT:  I'll give you a status when I issue my
16  ruling.

17  MR. SWEENEY:  Okay.

18  MS. BABBITT:  Thank you, Your Honor.

19  (Proceedings concluded.)

20              C E R T I F I C A T E

21  I, Patrick J. Mullen, do hereby certify that the
    foregoing is an accurate transcript produced from an audio
22  recording of the proceedings had in the above-entitled case
    before the Honorable MARY M. ROWLAND, one of the magistrate
23  judges of said Court, at Chicago, Illinois, on July 9, 2019.

24                          /s/ Patrick J. Mullen
                            Official Court Reporter
25                          United States District Court
                            Northern District of Illinois