**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE CAVELLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17-cv-5409 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| CHICAGO TRANSIT AUTHORITY, | ) | |
| DORVAL R. CARTER, JR., individually, | ) | |
| JOHN DOE 1, and JOHN DOE 2, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Magistrate Judge's Report and Recommendations [105] regarding Defendant's motion for sanctions [77], as well as Plaintiff's objections to the Report and Recommendations [115]. The Court adopts the Magistrate Judge's findings of fact and some of her recommendations regarding sanctions, and defers ruling on other recommendations. Plaintiff's objections are overruled in part and deferred in part. Defendant's motion for sanctions [77] is granted in part, denied in part, and deferred in part; specifically, the request for attorneys' fees and costs is granted, the request to dismiss the case or the CTA as a defendant is denied, and the request to exclude a document from evidence is deferred. The Court directs Defendants to submit by January 31, 2020, requests for attorneys' fees consistent with the Court's Opinion, along with appropriate supporting materials. Plaintiff and his counsel may submit any objections to the fees submitted by Defendants by February 14, 2020. The Court will then determine the appropriate monetary sanction for the conduct at issue. Plaintiff's counsel, Sweeney Scharkey & Blanchard LLC, shall be responsible for 50% of this amount and Plaintiff shall be responsible for the other 50%.

## I.  Background

In August 2015, George Cavelle resigned from his position as Chief Transportation Operations Officer at the Chicago Transit Authority ("CTA").  He subsequently pursued a job at King County Metro Transit in Seattle, Washington, but ultimately did not receive it.  On July 24, 2017, he filed a complaint [1] against the CTA, its president, and certain unknown CTA employees, alleging that they had interfered with his attempt to a job at King County Metro Transit.  He also brought several defamation-based claims, attempting to hold Defendants responsible for allegedly harmful statements.

The Court is now asked to consider Defendants' motion for sanctions, which seeks to hold Plaintiff and his counsel responsible for *their* allegedly harmful statement—namely, an accusation of witness tampering.  On February 6, 2019, Plaintiff's counsel sent Defendants' counsel an email accusing the CTA of "blatant witness tampering" involving multiple witnesses.  See [71-1] at 4. Over the next month, Defendants' counsel repeatedly sought basic information about the accusation, such as the identity of the alleged tamperer(s) and victim(s) of tampering.  Plaintiff's counsel did not respond to those requests.  On February 28, 2019, Defendants filed a motion [51] asking the Magistrate Judge, to whom the issue had been referred, to compel Plaintiff to identify the tamperer(s) and victim(s) of tampering.  At a status hearing, Plaintiff's counsel admitted—contrary to previous assertions—that only a single witness had allegedly been tampered with, and he identified the witness as George Mendenhall.  When pressed for the name of the alleged tamperer, Plaintiff's counsel confessed that he did not know and had to call his client to get the name.  [77-1] at 94-95.

The Magistrate Judge reminded Defendants' counsel of the seriousness of witness tampering and warned Plaintiff's counsel of the seriousness of accusing someone of witness

2

tampering. Defendants asked for an evidentiary hearing to sort out the accusation. The Magistrate Judge decided to hold a hearing and weigh the credibility of the live testimony herself, and she ordered the parties not to contact Mr. Mendenhall or the alleged tamperer (referred to as "Individual A") except to inform them of the need to appear and testify. See [71-1] at 93-94.

Two weeks later, the Magistrate Judge held the evidentiary hearing. According to Plaintiff's testimony at the hearing, Mr. Mendenhall said that someone at CTA told him he would not be paid for his time meeting with attorneys about Plaintiff's case unless he testified "for CTA" (apparently meaning that his testimony must be favorable to the CTA). *Id.* at 160. Plaintiff admitted on cross, however, that that Mr. Mendenhall did not tell him that the CTA said Mr. Mendenhall would not be paid for time spend testifying. *Id*. at 175.

Mr. Mendenhall also testified. He stated that he never told anyone that he was being threatened about his testimony in this case. *Id*. at 221-222, 226. His testimony also suggested that his concerns about "retaliation" and job security were related to his involvement in the case generally and his wife and baby's health problems, not because of anything specific that anyone at CTA did or said to him. *Id*. at 239-240. Also, while Plaintiff testified that Mr. Mendenhall said CTA counsel requested his financial records and his wife's financial records (*id*. at 165), Mendenhall specifically said that did not happen. *Id*. at 233-34. Individual A was also available, but neither Defendants' counsel nor Plaintiff's counsel called him to testify. *Id.* at 242.

After the hearing, Defendants moved for sanctions based on Plaintiff and his counsel's unfounded accusation of witness tampering. [77]. Defendants sought to recover fees and costs for the evidentiary hearing and briefing the motion for sanctions. Defendants also asked for dismissal of the case or, in the alternative, exclusion of a document, the "Lookout Bulletin," that they expect Mr. Mendenhall would testify about if called at trial.

3

The Magistrate Judge issued a Report and Recommendation [105] that recommends granting the motion for sanctions in part. She found Mr. Mendenhall's testimony credible, but found Mr. Cavelle's testimony not to be credible, because it was "at times inconsistent and exaggerated, unsupported by any documentary evidence, and contradicted by [Mr.] Mendenhall." [105] at 5. She concluded that Plaintiff and his counsel's accusations of witness tampering, their failure to correct or withdraw their allegations, and their failure to provide basic information to Defendants for the purpose of investigating the allegations, were sanctionable. *Id.* at 9-11; 13-16. She determined that an appropriate monetary sanction was an award of Defendants' reasonable attorneys' fees and costs for the evidentiary hearing and briefing on the motion for sanctions, split evenly between Plaintiff and his counsel. She also determined that dismissal of the entire case was not warranted, but instead recommended excluding the Lookout Bulletin.

Plaintiff and his counsel filed objections [115] to the Report and Recommendation, which are now before this Court.

## II.  Legal Standard

*A. Magistrate Judge's Report and Recommendation*

"When a magistrate judge prepares a report and recommendation for a district court, the governing statute provides that the district court 'shall make a de novo determination' with respect to any contested matter." *Kanter v. C.I.R.*, 590 F.3d 410, 416 (7th Cir. 2009) (quoting 28 U.S.C. § 636(b)). The Court of Appeals has observed:

> De novo review requires the district judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion. The district judge is free, and encouraged, to consider all of the available information about the case when making this independent decision. A district judge may be persuaded by the reasoning of a magistrate judge or a special master while still engaging in an independent decision-making process.

*Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013) (citing *United States v. Raddatz*, 447

U.S. 667, 676 (1980)). The district judge makes the ultimate decision to adopt, reject, or modify the magistrate judge's recommendation. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009); see also Fed. R. Civ. P. 72.

*B. Sanctions Under 28 U.S.C. § 1927 and the Inherent Power Standard*

The Court has authority under 28 U.S.C. § 1927 to sanction "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously * * *." 28 U.S.C. § 1927. Section 1927 seeks to deter conduct intended to impede, unnecessarily multiply, or delay ongoing litigation proceedings. *Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 794 (7th Cir. 1983); see also *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989). Accordingly, sanctions against an attorney are warranted under Section 1927 where that attorney has acted in an objectively unreasonable manner by engaging in a "serious and studied disregard for the orderly process of justice" or where a "claim [is] without a plausible legal or factual basis and lacking in justification." *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988) (internal citations and quotations omitted). "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious," and warrants sanctions under Section 1927. *Id.* at 433-34. "An award of fees under § 1927 is given solely to the discretion of the district court." *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988); *Rojas v. Town of Cicero, Ill.*, 775 F.3d 906, 908 (7th Cir. 2015); see also *Globaltap, LLC v. Cantwell & Cantwell*, 2018 WL 3190823, at *1 (N.D. Ill. Mar. 21, 2018).

The Court also has the inherent power to impose sanctions for conduct that abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991); *Ramirez v. T&H Lemont,*

*Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) ("[A] court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct."). "[A] district court's inherent power to sanction for violations of the judicial process is permissibly exercised not merely to remedy prejudice to a party, but also to reprimand the offender and to deter future parties from trampling upon the integrity of the court." *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009) "Although part of a court's consideration should be on the impact or effect that the conduct had on the course of the litigation, there is no requirement that the district court find prejudice." *Fuery v. City of Chi.*, 900 F.3d 450, 464 (7th Cir. 2018); *Salmeron*, 579 F.3d at 797 (quoting *Dotson v. Bravo*, 321 F.3d 663, 668 (7th Cir. 2003)). The Court's inherent power extends to misconduct by a party's lawyers. *Ball v. City of Chicago*, 2 F.3d 752, 758 (7th Cir. 1993). A district court should be cautious when exercising such inherent authority, *Chambers*, 501 U.S. at. at 50; see also *Methode Elecs., Inc.*, 371 F.3d at 927; *Mach v. Will Cty. Sheriff*, 580 F.3d 495, 502 (7th Cir. 2009).

Defendants, as the movants for sanctions, bear the burden of establishing by a preponderance of the evidence that sanctionable conduct occurred. *Ramirez*, 845 F.3d at 781. Before imposing sanctions, a court must find that "the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Id*. at 776. "Bad faith" or "vexatious" conduct, in both the inherent power and § 1927 contexts, does not require subjective bad intent; certain types of reckless conduct can suffice. See *Mach*, 580 F.3d at 501 ("[c]ourts have used phrases such as * * * "recklessly making a frivolous claim" to describe what constitutes "bad faith"); *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006) ("If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound,

6

the conduct is objectively unreasonable and vexatious."); *Stive v. United States*, 366 F.3d 520, 522 (7th Cir. 2004) ("Recklessly making a frivolous claim is treated as bad faith within the meaning of the American rule"); *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1185 (7th Cir. 1992) ("we have held that the bad faith standard has an objective component, and extremely negligent conduct, like reckless and indifferent conduct, satisfies this standard"). Furthermore, bad faith may occur beyond the filing of the case and "'may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.'" *Mach*, 580 F.3d at 501 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)) (quotation omitted).

## III. Findings of Fact

The Court adopts the Magistrate Judge's proposed findings of fact. The Court has conducted its own review of the record, including the parties' filings on the instant motion ([115], [124], and 134]), the parties' submission to the Magistrate Judge ([77], [93], and [94]), the 71-page transcript of the March 7, 2019, status hearing, the 116-page transcript of the March 21, 2019, evidentiary hearing the Magistrate Judge conducted, and the other material included with Defendant's opposition to Plaintiff's objections to the Report and Recommendation (see [124-1]). Where the Magistrate Judge made credibility determinations, the Court believes the record, admittedly not a perfect substitute for viewing live testimony, nonetheless strongly supports her determinations. See *Queally v. Driscoll*, 1996 WL 67282, at *3 (N.D. Ill. Jan. 12, 1996) (giving some weight to magistrate judge's credibility determinations and citing *United States v. Jaramillo*, 714 F. Supp. 323 (N.D.Ill.), aff'd, 891 F.2d 620 (7th Cir. 1989)); see also *United States v. Hardin*, 710 F.2d 1231, 1235 (7th Cir. 1983) (district court's adoption the magistrate's credibility rulings without hearing the testimony is not abuse of discretion unless the record reflects that those rulings were themselves clearly erroneous and entitled to no weight).

The Court highlights a few factual findings from the Magistrate Judge's Report and the evidentiary hearing that are significant in light of the parties' briefing on the motion for sanctions. First, Mr. Mendenhall never told anyone that he was being threatened about his testimony in this case. [77-1] at 221-23. Second, Plaintiff admitted that Mr. Mendenhall did not tell him that the CTA said Mr. Mendenhall would not be paid for time spend testifying. *Id.* at 175. Third, Plaintiff's counsel, at the time of making the accusation, alleged multiple witnesses had been tampered with by multiple tamperers. *Id*. at 4-5. When pressed by the Magistrate Judge, he walked the accusation back to a single tamperer and a single witness. At that point, a month after first leveling the accusation, Plaintiff's counsel did not even know the alleged tamperer's name. *Id.* at 94-95.

## IV. Conclusions of Law

The Court adopts the Magistrate Judge's conclusions of law and recommendation regarding monetary sanctions. Both Plaintiff and his counsel acted in bad faith, in that they recklessly claimed individuals from CTA engaged in witness tampering. First, the Court agrees with the Magistrate Judge's conclusion that Plaintiff "in reporting his conversation with [Mr.] Mendenhall to his attorney, misrepresented the conversation." [105] at 15. Based on his attorney's emails and initial representations to the Magistrate Judge, Plaintiff seems to have told his attorneys that multiple CTA personnel tampered with multiple witnesses. By the March 7 status hearing, counsel—after consulting Plaintiff—revised the accusation to a single CTA employee threatening a single witness. Plaintiff also misrepresented the conversation in court, at one point testifying under oath that Mr. Mendenhall said he had been threatened, but later admitting that Mr. Mendenhall never said that. The circumstances of the accusation and its collapse under judicial scrutiny lead the Court to believe that it was mad recklessly, which constitutes bad faith and

8

warrants sanctions under the Court's inherent authority. See *Egan v. Pineda*, 808 F.3d 1180,1181 (7th Cir. 2015) (affirming sanctions under the court's inherent authority for falsely alleging in a complaint that defendants had committed sexual assault)

The Court also agrees with the Magistrate Judge's conclusion that "[i]t was objectively unreasonable for Plaintiff's counsel to make such a serious allegation with so little information and to continue with the allegation for months, well aware of the time and resources being spent and potential consequences." [105] at 15. Based on the record, it appears that Plaintiff's counsel did not adequately investigate Plaintiff's allegations when they first arose, which means he should not have lobbed an accusation of "blatant" witness tampering against Defendants. See *Dal Pozzo*, 463 F.3d at 614 ("If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious."). A month later, the changing of the story from "multiple tamperers and victims of tampering" to "a single tamperer and victim of tampering" should have alerted counsel to the need to dig deeper—and given the gravity of the accusation, to do so with alacrity. If counsel did, they failed to alert Defendants or the Court to anything they learned, and they allowed the unnecessary investigation into non-existent tampering to proceed to and through the evidentiary hearing. For these reasons, the Court agrees that sanctions are appropriate, under both the Court's inherent authority and 28 U.S.C. § 1927. See *Egan*, 808 F.3d at 1181 (affirming sanctions under the court's inherent authority for falsely alleging in a complaint that defendants had committed sexual assault); *Dal Pozzo*, 463 F.3d at 610 (affirming sanctions under Section 1927 against Plaintiff's attorney for obstructionism that necessitated an otherwise unnecessary motion). Defendants are entitled to reasonable attorneys' fees and costs to compensate them for the evidentiary hearing and briefing

on the motion for sanctions. Plaintiff's counsel shall be responsible for 50% of this amount and Plaintiff shall be responsible for the other 50%.

Turning to the final recommendation, the Court agrees that dismissal of the case is too severe a sanction for the conduct at issue. But the Court defers ruling on the Magistrate Judge's recommendations regarding exclusion of the Lookout Bulletin. Sanctions must be proportional to the violation, and right now, this Court has limited ability to assess the proportionality of excluding this piece of evidence. This Court has not had the benefit of working through discovery with the parties, as the Magistrate Judge did, and lacks her familiarity with the details of the facts and the players in the case as a whole. The Magistrate Judge's recommendation may be exactly right, and as the case proceeds, this Court will become better equipped to make that determination. So the Court defers ruling on exclusion of the Lookout Bulletin for now, and Defendants may raise this evidentiary issue in dispositive motions, at trial, or at another appropriate time.

**V.  Plaintiff's Objections**

Plaintiff and his counsel pick at the Magistrate Judge's ruling, taking exception to a sentence here and a word there, but nothing in their briefing persuades this Court that it should reach a different conclusion than the Magistrate Judge did or that she made any error.

Before addressing Plaintiff's objections, the Court would like to clarify for Plaintiff and his counsel the nature of witness tampering. It is not a "claim" in the sense that, for example, defamation is a claim; it is not a civil cause of action that a party may bring against another at its choice and leisure. Rather, witness tampering is an attack on the integrity of the judicial process serious enough to warrant criminalization and severe punishment. See 18 U.S. Code § 1512. Courts must take accusations of witness tampering seriously, as should those who are accused of

witness tampering. With that in mind, the Court turns to Plaintiff's objections. Objections 1 through 7 are overruled, and the Court defers addressing Objection 8.

*Objection 1*: "The Report states, "Plaintiff and his attorneys wrongfully pursued an unsubstantiated claim of witness tampering. Their conduct cost this Court and Defendants time and resources. It slowed resolution of the case." p. 4. This finding is contradicted in every respect."

This objection is hair-splitting over the Magistrate's use of the word "pursue." Plaintiff and his counsel argue that they did not "pursue" the witness tampering issue—but instead merely made the accusation then refused to provide any details to Defendants until ordered to by the Magistrate Judge—and suggest that Defendants are at fault for attempting to investigate, seeking discovery about the allegation, and urging an evidentiary hearing on the issue. Whether this counts as "pursuit" or not, Plaintiff and his counsel leveled the accusation and refused to provide Defendants with any of the information that would have resolved the issue quickly. That undoubtedly cost the Court and Defendants resources and time and slowed resolution of the case.

*Objection 2*: "The Report states, "[Plaintiff and counsel's] conduct also infringed Defendants' ability to investigate a serious accusation against them and infringed defense counsels' ability to defend their clients on the merits.["] p. 4. This finding is contradicted in every respect."

As noted above, Plaintiff and counsel refused to give Defendants any information beyond the bare accusation of "blatant" witness tampering until the Magistrate Judge ordered them to do so. Without more than the base (and ultimately baseless) accusation, Defendants could do little if anything to investigate. Additionally, Defendants had to spend time and energy addressing the allegations of witness tampering, time and energy that otherwise could have been devoted the merits of the case. Moreover, the Magistrate Judge ordered Defense counsel not to contact Mr. Mendenhall and Individual A between the March 3, 2019 status and the March 21, 2019 evidentiary hearing. Not being able to talk with witnesses, especially those who are employed by a client, hinders an attorney's ability to defend a suit on the merits.

11

*Objection 3:* "The Report ignores extended portions of Mr. Mendenhall's testimony wherein he alludes to the fact that he felt there would be retaliation and he was "confused" as to whether he would be paid."

This objection ignores footnote 4 of the Report and Recommendation, which squarely addresses Mr. Mendenhall's statements about "retaliation" in the full context of his testimony. Furthermore, the context of all of Mr. Mendenhall's testimony shows that his concern was the hassle of getting paid for his time meeting with attorneys (i.e. "chasing [his] paycheck"), not *whether* he would be paid for that time.

*Objection 4:* "The Report improperly castigates Plaintiff's counsel for not disclosing identities before a time when Plaintiff's counsel had any obligation to do so, and after Plaintiff's counsel had indicated that Plaintiff would not be pursing the matter further."

Again, witness tampering is not a civil cause of action that Plaintiff and his counsel may bring or not at their whim. As an officer of the Court, Plaintiff's counsel should have recognized the gravity of the accusation he made, and the necessity of resolving it. It should also have been obvious that resolving the alleged problem would require, at a minimum, disclosing to Defendants' counsel (or the Court) the names of the alleged tamperer(s) and victim(s) of tampering. Plaintiff refused to do so for a month, until the Magistrate Judge ordered him to do so. Plaintiff and his counsel's refusal to work with Defendants' counsel, or to get the court involved earlier, needlessly multiplied and dragged out the proceedings. That intransigence earned the castigation that Plaintiff's counsel now complains of, and which the Court finds appropriate.

Plaintiff's counsel argues that they had no obligation to disclose the names of the alleged tamperer(s) and victim(s) of tampering before the Magistrate Judge ordered them to. Ever if they had no duty under the discovery rules—a point as to which the Court is not convinced—the argument misses the mark for two reasons. First, if Plaintiff's counsel truly believed that CTA had engaged in "blatant witness tampering," they should have wanted to address the issue as soon

as possible, or at least quickly. That requires, at a minimum, disclosing names. If Plaintiff's counsel did not trust Defendants' counsel (though the February 6, 2019, email suggests that was not a problem), then Plaintiff's counsel could have turned to the Court for help. Plaintiff's counsel did neither.

Second, attorneys have duties beyond those imposed by discovery rules.[1] Those include (but are not limited to) a duty to make reasonable efforts to expedite litigation,[2] a duty not to knowingly make a false statement to the court or fail to correct a false statement of material fact,[3] a duty not to make a false statement of fact or law to a third person,[4] and a duty not to knowingly misrepresent, mischaracterize, misquote, or miscite facts in any oral or written communication to the court.[5] In sum, for practical and ethical reasons, Plaintiff's counsel should not have lobbed an accusation of witness tampering and then refused to help Defendants and the Court resolve the problem for as long as they did. The Magistrate Judge's Report and Recommendation appropriately reprimands counsel for doing so.

*Objection 5:* "The Report improperly seeks to sanction Plaintiff and Plaintiff's counsel for failing to 'withdraw his witness tampering claim.'"

The Report properly recommends sanctions against Plaintiff and his counsel for making unfounded accusations of "blatant" tampering with multiple witnesses and for Plaintiff counsel's refusal to work with Defendants' counsel (or, if he did not trust them, with the Court) to identify the alleged wrongdoer(s) and stop the alleged wrongful acts. Again, this is not a "claim" in the sense of a civil cause of action that Plaintiff and his counsel can add or drop at will. If Plaintiff

---

[1] See, *e.g.*, Local Rule 83.50 Rules of Professional Conduct.
[2] *E.g.* Illinois Rule of Professional Conduct 3.2: Expediting Litigation.
[3] *E.g.* Illinois Rule of Professional Conduct 3.3: Candor Toward the Tribunal, Section (a)(1).
[4] *E.g.* Illinois Rule of Professional Conduct 4.1: Truthfulness in Statements to Others, Section (a).
[5] *E.g.* Standards for Professional Conduct within the Seventh Federal Judicial Circuit, Lawyers' Duties to the Court, #5.

and his counsel had been willing to admit that the witness tampering accusation was unfounded, they could have done so, for example, in a letter to opposing counsel, or in a status report to the Court, or in person at a hearing; or as the Magistrate Judge noted, Plaintiff and his counsel could have moved to cancel or hold in abeyance the evidentiary hearing. [105] at 10.

*Objection 6:* "The Report suggests that a probing conversation with Plaintiff would have obviated the tampering issue."

Maybe it would have. As of March 7, 2019, Plaintiff's counsel did not know the name of the alleged tamperer and had to call Plaintiff to get it. [77-1] at 94-95. Before that day, counsel had also asserted that multiple witnesses had been tampered with, and had to walk that accusation back to just a single witness. A probing conversation with Plaintiff might have resolved at least these issues, and perhaps given Plaintiff's counsel more pause before firing off accusations of "blatant" witness tampering. This objection also glosses over Plaintiff's counsel's refusal to help Defendants' counsel investigate the allegations, which likely would have resolved the tampering accusations much more quickly. The latter problem is a far larger part of the Report and Recommendation, and this Court sees no error in the Magistrate Judge's decision to include in the Report Plaintiff's counsel's less-than-adequate investigation into his client's story. Finally, Plaintiff's Counsel's complaint that he could not speak with Mr. Mendenhall before the evidentiary hearing—which the Magistrate Judge addressed at the March 7, 2019 status hearing—is unavailing. That did not inhibit counsel's conversation with Plaintiff, and if anything, that limit underscores the need to probe and test Plaintiff's story.

*Objection 7:* "The Report improperly finds that Plaintiff and counsel engaged in sanctionable conduct by filing a response to the Motion for Sanctions wherein Plaintiff made arguments why Plaintiff's and counsel's conduct was not in bad faith."

14

This objection misunderstands two sentences in the Report,[6] which mostly serve to transition from a description of the evidentiary hearing to analysis of sanctionable conduct. The Report makes clear that the sanctionable conduct was Plaintiff and his counsel's unsupported assertions about witness tampering, up to and including the March 21, 2019 evidentiary hearing. Plaintiff's counsel then made additional unsupported assertions about witness tampering in the brief [93] opposing Defendants' motion for sanctions. Specifically, he claimed that the CTA's General Counsel made false statements to the Court and that Individual A really did commit witness tampering, despite the evidence and Mr. Mendenhall's testimony to the contrary. [93] at 18-21. The Report uses those arguments from Plaintiff's opposition brief as examples of Plaintiff and his counsel's unsupported accusations.[7] The recommendation for sanctions does not rest on the assertions in the opposition brief (and Plaintiff's counsel may not want to raise questions about whether any statements in the opposition brief are sanctionable).

*Objection 8:* "The Report offers no explanation as to the arbitrary sanction of barring evidence of the Lookout Bulletin."

Because the Court reserves ruling on the exclusion of the Lookout Bulletin, it declines to address this objection at this time.

## IV. Conclusion

For the reasons set forth above, The Court adopts the Magistrate Judge's findings of fact and some of her recommendations regarding sanctions, and defers ruling on other recommendations. Plaintiff's objections are overruled in part and deferred in part. Defendant's

---

[6] [105] at 8: "These arguments serve instead as further examples of Plaintiff making unsupported claims against Defendants. It is why sanctions are proper in this case."
[7] *Cf. Egan v. Huntington Copper Moody & Maguire, Inc.*, 2015 WL 1631547, at *6-7 (N.D. Ill. Apr. 10, 2015) aff'd sub nom. *Egan v. Pineda*, 808 F.3d 1180 (7th Cir. 2015), in which the district judge concluded that sanctions were warranted for false accusation in the complaint and subsequently discussed additional "distressing" behavior by the sanctioned attorney during the litigation.

15

motion for sanctions [77] is granted in part, denied in part, and deferred in part; specifically, the request for attorneys' fees and costs is granted, the request to dismiss the case or the CTA as a defendant is denied, and the request to exclude a document from evidence is deferred. The Court directs Defendants to submit by January 31, 2020 requests for attorneys' fees consistent with the Court's Opinion, along with appropriate supporting materials. Plaintiff and his counsel may submit any objections to the fees submitted by Defendants by February 14, 2020. The Court will then determine the appropriate monetary sanction for the conduct at issue. Plaintiff's counsel, Sweeney Scharkey & Blanchard LLC, shall be responsible for 50% of this amount and Plaintiff shall be responsible for the other 50%.

Date: January 13, 2020

_____
Robert M. Dow, Jr.
United States District Judge