**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GEORGE CAVELLE,

          Plaintiff,

   v.

CHICAGO TRANSIT AUTHORITY, and
DORVAL CARTER, JR.,

          Defendants.

No. 1:17-CV-5409

Judge Robert M. Dow, Jr.
Magistrate Judge Gabriel A. Fuentes

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON
THE PLEADINGS AND REQUEST FOR SANCTIONS PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 26(g)**

**Exhibit List**

| | |
|---|---|
| Exhibit A | March 7, 2019 Transcript before Mag. Judge Rowland at 25-30 |
| Exhibit B | Plaintiff's Supplemental Response to Defendants' Second Supplemental Interrogatories dated 4/15/19 |
| Exhibit C | Babbitt-Sweeney Feb 2020 Email exchange |

# EXHIBIT A

1

1                IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
2                      EASTERN DIVISION

3

4  GEORGE CAVELLE,                )  No. 17 C 5409
                          )
5             Plaintiff,     )
                          )
6           vs.            )  Chicago, Illinois
                          )
7  CHICAGO TRANSIT AUTHORITY, DORVAL  )
  R. CARTER, JR., individually, JOHN  )
8  DOE 1, and JOHN DOE 2,        )
                          )  March 7, 2019
9          Defendants.     )  11:05 a.m.

10               TRANSCRIPT OF PROCEEDINGS
11    BEFORE THE HON. MARY R. ROWLAND, MAGISTRATE JUDGE

12
  APPEARANCES:
13
  For the Plaintiff:    MR. ROBERT D. SWEENEY
14                      MR. JOHN J. SCHARKEY
                      Sweeney & Scharkey LLC,
15                      111 West Washington Street, Suite 1160,
                      Chicago, Illinois  60602
16

17  For the Defendants:   MR. JOHN F. KENNEDY
                      MS. ELIZABETH E. BABBITT
18                      Taft, Stettinius & Hollister LLP,
                      111 East Wacker Drive, Suite 2800,
19                      Chicago, Illinois  60601

20
  ALSO PRESENT:        MS. KAREN G. SEIMETZ
21

22

23                 PATRICK J. MULLEN
               Official Court Reporter
24            United States District Court
       219 South Dearborn Street, Room 1412
25           Chicago, Illinois  60604
              (312) 435-5565

25

1    THE COURT:  Okay.

2    MR. SWEENEY:  If that's off the table, then fine.

3    THE COURT:  Fine.

4    MR. SWEENEY:  Yeah.

04:34:00  5    THE COURT:  Online presence, posting on websites,

6    social media, you've got the policies.  Do you have any

7    outstanding discovery on that?

8    MR. KENNEDY:  Yes, we do, Judge.

9    THE COURT:  Okay.  What's up with that?

04:34:15  10    MR. KENNEDY:  To put it in context, Mr. Cavelle had a

11    side job or a side career, depending on how it's characterized.

12    He referred to himself as the G Cavelle Project, and he

13    represents himself to be a DJ, musician, artist, and the like.

14    He had a Facebook page at the time that has since been taken

04:34:43  15    down, and we wanted to get access to his Facebook page.  His

16    website that he had at the time has been taken down, and we

17    wanted access to that, and his various social media.

18    The reason, Judge, is that as the number 3 at the CTA,

19    the images depicted in these various outlets depict Mr. Cavelle

04:35:11  20    in bars, depict scantily clad women.  They project an image not

21    of somebody who's the number 3 and responsible for CTA safety,

22    but somebody who's out clubbing and suggests a certain

23    lifestyle that doesn't reflect the gravity of the job that he

24    holds.

04:36:02  25    We wanted to -- that was part of the culture that

1  Mr. Cavelle had when he was at the CTA.  Oftentimes, and one in

2  particular where there was a catastrophe, where there was a

3  derailment, Mr. Cavelle was at one of these jobs, these side

4  jobs, and the bottom line for the person in charge of safety is

04:36:38   5  you're on 24/7.  If you're not available, you make plans to

6  have your underlings cover everything, and you're instantly

7  available by phone.

8      So this side career was an issue that we do intend to

9  inject into the trial because it gets into that the person

04:37:01  10  who's now representing the CTA to the media and to the public

11  is now also available online doing all these other sorts of

12  things that put the CTA in the worst possible light.

13      THE COURT:  Well, I mean, I can see why that's

14  interesting.

04:37:20  15      MR. KENNEDY:  But it's part of the reason why the CTA

16  was done with him.

17      THE COURT:  Well, right, but it doesn't -- how does it

18  go to defamation if you didn't relay this stuff to Seattle, and

19  how does it go to tortious interference?  I mean, he's not

04:37:46  20  suing you for termination, is he?

21      MR. SWEENEY:  No.

22      THE COURT:  So I get in a classic Title VII or in a,

23  you know, termination case, yes, this is why you terminated

24  him, that he's a disaster, but I don't -- what's the relevance?

04:38:06  25      MR. KENNEDY:  Well, it depends on what -- again,

1　　that's why I asked for the clear boundaries of their claim.

2　　What do they say the CTA or president Carter or whomever said

3　　is a defamatory statement?  Are they saying that we falsely

4　　alleged that Mr. Cavelle had issues with respect to spending a

5　　lot of time in bars or with respect to spending a lot of time

6　　in this other lifestyle.  If they're not putting those at

7　　issue, then I can pull back on that.

8　　　　　　　THE COURT:  Is that it?  I mean, I get that they

9　　said as I'm understanding it, they said something about he

10　　stole from them --

11　　　　　　　MR. SWEENEY:  Right.

12　　　　　　　THE COURT:  -- which has to do with this train fund,

13　　charitable train fund, and then he had sexual relations with a

14　　subordinate.  You know, you have a right to defend on that and

15　　truth and all that, but did anything come up about his either

16　　having extra employment, which I don't even know if you're

17　　allowed to do, but okay there's that, and then the type of

18　　extra employment?  You know, whether it's being an altar boy or

19　　whether it's running in a bar, was any of that reported to

20　　Seattle?

21　　　　　　　MR. KENNEDY:  Well, counsel had mentioned it earlier.

22　　There's an e-mail that was sent to the former president of the

23　　CTA Frank Kruesi from president Carter where president Carter

24　　talks about Mr. Cavelle's drinking and essentially an

25　　intervention by his colleagues or friends to address his

04:38:30

04:38:52

04:39:10

04:39:37

04:39:57

1    drinking.

2         THE COURT:  Okay.

3         MR. KENNEDY:  It alludes to this sort of thing.  So if

4    they're claiming that we, the CTA or Mr. Carter, president

04:40:11   5    Carter, made statements to the Seattle folks saying "this guy

6    has an alcohol problem or a cocaine problem and you ought to

7    take heed," then we have to get into that.

8         If they're saying, "well, that's not part of our case,

9    counsel," then we can adjust discovery appropriately.

04:40:31   10        MR. SWEENEY:  So what counsel is referencing is an

11   e-mail that Mr. Carter sent to the former president of the CTA,

12   Frank Kruesi.

13        THE CLERK:  Counsel, I'm sorry to interrupt.

14        MR. SWEENEY:  Oh, I'm sorry.

04:41:10   15        THE CLERK:  Can you move the mic a little closer to

16   you?

17        MR. SWEENEY:  Yeah.

18        THE CLERK:  Thank you.

19        MR. SWEENEY:  What the current president, Dorval

04:41:20   20   Carter, sent to Frank Kruesi was an e-mail in which he said

21   that Mr. Cavelle stole $6,100 and that they made him pay it

22   back.  That's not true.  They said that he was a potential drug

23   abuser and abused alcohol and that there was going to be an

24   intervention by his friends.  I forget the details.  We've

04:42:09   25   given it to them in the amended complaint, but to the extent

1    we're going to get into the fact that he -- he did list the CTA

2    does have a policy with respect to secondary employment, and he

3    did list that he did this as secondary employment, even if he

4    didn't get paid most of the time, and I don't believe that the

04:42:44    5    G Cavelle Project had anything to do with anything that was

6    said to either Seattle or to Mr. Kruesi.  It looks like they're

7    just trying to embarrass him.

8        THE COURT:  So the defamation, it goes to Seattle and

9    to the former president of CTA?

04:43:11    10        MR. SWEENEY:  Yes.

11        THE COURT:  I see.  So to the former president of

12    CTA -- and maybe president Carter didn't communicate this to

13    Seattle -- but to the former president of CTA who I imagine has

14    a number of contacts in this area, president Carter also raised

04:43:38    15    this drug abuse, potential drug abuse and alcohol abuse issue,

16    which means this kind of more a lifestyle issue.

17        MR. SWEENEY:  I don't know if that would be lifestyle

18    but, yeah, he did say that to Mr. Kruesi.

19        THE COURT:  Okay.  And you have a claim for that.

04:44:11    20        MR. SWEENEY:  Yes.

21        THE COURT:  That he should not have, that president

22    Carter should not have said that.

23        MR. SWEENEY:  That's true.

24        THE COURT:  Okay.

04:44:18    25        MR. SWEENEY:  But we're saying if you take somebody's

1    Facebook page, for instance, and start using that as -- I don't

2    know why you'd be using it, but pictures of people that they

3    might have posted on their Facebook page or linked on their

4    Facebook page, that doesn't go at all to the issues raised with

04:44:43    5    Mr. Kruesi.

6            THE COURT:  So they're -- so president Carter is

7    moving to discover the Facebook postings.

8            MR. SWEENEY:  Say it again?

9            THE COURT:  So president Carter is moving to discover

04:44:57    10    the Facebook postings.

11           MS. BABBITT:  As well as his website, Your Honor,

12   which has the images we believe with him with drugs -- or not

13   drugs, drinking, nightclubs, that sort of thing.

14           THE COURT:  Okay.  So here's my thought on that.  I

04:45:49    15    think you can have a fight about the admissibility of this

16   stuff, and there's a lot of fights in the courts about

17   admissibility of this kind of stuff.  But given that president

18   Carter is -- I thought that the defamation was limited to what

19   went out to Seattle, but given that he also has this

04:46:14    20    communication with the former president of CTA and it's a

21   little broader because it's going kind of after the character

22   of the plaintiff in terms of his use, I think that this is fair

23   game.  So whether Judge Dow is going to admit it, that's a

24   fight for another day.

04:46:39    25           But what does it take to get this discovery?  I mean,

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

GEORGE CAVELLE,

          *Plaintiff,*

     v.

CHICAGO TRANSIT AUTHORITY,
DORVAL R. CARTER, JR., individually,
JOHN DOE 1, and JOHN DOE 2,

         *Defendants.*

Case No. 17-CV-05409

Judge Robert M. Dow, Jr.
Magistrate Judge Mary M. Rowland

**PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANTS' SECOND**
**SUPPLEMENTAL INTERROGATORIES**

NOW COMES Plaintiff, George Cavelle ("Cavelle"), by and through his undersigned counsel, and for his Supplemental Response to Defendants' Second Supplemental Interrogatories, states as follows:

1. Identify and describe in detail every defamatory statement you assert has been made against you and for which you seek relief in this action. For each defamatory statement you identify, state the following:

a) The speaker(s) of the defamatory statement;

b) The receiver(s) of the defamatory statement;

c) The date and time the defamatory statement was made;

d) The manner in which the defamatory statement was communicated; and

e) The manner in which you came to know such a defamatory statement was made.

**RESPONSE:**

a)    **As further detailed in the First Amended Complaint, the speaker in the case of the defamatory statements made regarding Plaintiff were Dorval Carter and the CTA.**

b)    **As further detailed in the First Amended Complaint, the "receiver" of the defamatory statements from Dorval Carter were Robert Gannon and Frank Kruesi.  The "receiver" of the defamatory statements from CTA were all individuals who observed the Wanted Poster on or about CTA properties.**

c)    **As detailed in the First Amended Complaint, the defamatory statements made by Dorval Carter were made to Frank Kruesi on or around September 3-5, 2015 and to Robert Gannon on or about August 9, 2016.  On information and belief, the Wanted Poster was posted on CTA on and after September 16, 2015.**

d)    **As detailed in the First Amended Complaint, the defamatory statements made by Dorval Carter were made via email and phone conversation.  The defamatory statement by the CTA was a document published throughout the CTA property as a Wanted Poster.**

e)    **Plaintiff came to know of the defamatory statements via oral communications regarding the statements to Robert Gannon and the Wanted Poster and by reading the email to Frank Kruesi.**

Dated: April 15, 2019

Respectfully Submitted,

GEORGE CAVELLE

By:＿＿ s/ Robert D. Sweeney ＿＿＿＿
Robert D. Sweeney
John J. Scharkey
Zachary M. Slavens
SWEENEY & SCHARKEY, LLC
111 West Washington Street
Burnham Center, Suite 1160
Chicago, Illinois 60602
Tel. (312) 384-0500

*Counsel for George Cavelle*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2019, I caused the foregoing to be served on all counsel with an appearance in the case:

John Francis Kennedy
Elizabeth Erin Babbitt
Allison Emma Czerniak
Paul Coogan
Taft Stettinius & Hollister LLP
111 East Wacker Drive
Suite 2800
Chicago, Illinois 60601
jkennedy@taftlaw.com
ebabbitt@taftlaw.com
aczerniak@taftlaw.com
pcoogan@taftlaw.com

Dated: April 15, 2019                    By: /s/ Zachary M Slavens

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE CAVELLE,

      *Plaintiff,*

            v.

CHICAGO TRANSIT AUTHORITY, and
DORVAL R. CARTER, JR. individually,

      *Defendants.*

Civil Action No. 1:17-cv-5409

Judge Robert M. Dow, Jr.
Magistrate Judge Mary M. Rowland

## RULE 33 VERIFICATION

I, George Cavelle, hereby declare under oath that the information contained in all the responses to Defendants' interrogatories previously served on Defendants are true and correct to the best of my knowledge, information, and belief as of this 15th day of April, 2019.

George Cavelle

# EXHIBIT C

**Babbitt, Elizabeth E.**

| | |
|---|---|
| **From:** | Robert D. Sweeney <rsweeney@ssbpartners.com> |
| **Sent:** | Friday, February 14, 2020 11:48 AM |
| **To:** | Babbitt, Elizabeth E. |
| **Cc:** | Kennedy, John; Czerniak, Allison E.; Coogan, Paul J. |
| **Subject:** | RE: Cavelle v. CTA Discovery |

Elizabeth,

Thank you for your email.  With respect to the issues you raise:

1) Received and we intend to comply with Judge Fuentes's order.
2) With respect to limiting the claim to Mr. Carter's statement that Mr. Cavelle stole $6,100 from CTA, we believe that would ignore multiple additional statements in the email that we claim are false and which we believe Mr. Carter lacked reasonable basis to make.  Accordingly, you should take whatever discovery you deem appropriate.  That said, Plaintiff reserves all rights with respect to the same.
3) As you are aware, until Tuesday of this week we had been advised that the deposition of Mr. Keating would take place in February.  While the end of March is very busy, it is a priority for us that we get this deposition completed.  As such, lets plan on March 30 at 10:00 AM.  We will send a notice.
4) Presumably, you want a date after March 16  for Mr. Cavelle's deposition since that is when the document production referenced in Item 1 would be due.  Assuming this is correct, I will look for dates between March 16 and March 31.  If you already know dates in that range that you are not available, please advise.  If you would be open to taking Mr. Cavelle's deposition before March 16, please let me know and I will check on dates during that range as well.

On another issue, due to demands in other matters, it appears we are going to need 3 additional business days to respond to your fee petition.  Please let me know if you have an objection to us taking until Wednesday, 2/19, to file our response, with a commensurate extension for your reply.

If you would like to discuss any of these matters further let me know and we can arrange a call.

Bob

**Robert D. Sweeney**
Sweeney, Scharkey & Blanchard LLC
230 West Monroe Street
Suite 1500
Chicago, Illinois 60606
Direct (312) 384-1255
rsweeney@ssbpartners.com
www.ssbpartners.com

**SWEENEY | SCHARKEY | BLANCHARD**

Confidentiality Notice: This email may contain privileged or confidential information. Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Babbitt, Elizabeth E. <ebabbitt@taftlaw.com>
**Sent:** Friday, February 14, 2020 10:43 AM
**To:** Robert D. Sweeney <rsweeney@ssbpartners.com>
**Cc:** Kennedy, John <jkennedy@taftlaw.com>; Czerniak, Allison E. <aczerniak@taftlaw.com>; Coogan, Paul J.
<PCoogan@taftlaw.com>
**Subject:** RE: Cavelle v. CTA Discovery

Good Morning Bob.  We wanted to address a few item on the case with you:

(1) A copy of Defendants' requests for production are attached.  As Mag. Judge Fuentes ordered at the last hearing,
     Plaintiff's responses to these requests are due on or before March 16, 2020. (Dkt. 143.)
(2) You have not responded to my inquiry below regarding what allegations in the Kruesi correspondence Plaintiff
     intends to put at issue in the case.  As I mentioned, if the parties could reach agreement, this would limit some
     of the necessary discovery.
(3) You have also not responded to Allie's note regarding the deposition of Mr. James Keating.  As Allie indicated in
     her February 11 email, Mr. Keating is available for a deposition in March 23-25, 27 (after 10:30am), 30-31.  Can
     you please confirm what day works for you?
(4) We need a date in March for Mr. Cavelle's deposition. Can you please identify what days work for that?

Thank you,

Elizabeth

# Taft /

**Elizabeth E. Babbitt**
Partner
ebabbitt@taftlaw.com
Dir: 312.836.4116
Tel: 312.527.4000  |  Fax: 312.966.8556
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601-3713

**Taft Bio**
**Download vCard**
**taftlaw.com**

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If
you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in
error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Babbitt, Elizabeth E.
**Sent:** Monday, February 10, 2020 4:34 PM
**To:** 'Robert D. Sweeney' <rsweeney@ssbpartners.com>
**Cc:** Kennedy, John <jkennedy@taftlaw.com>; Czerniak, Allison E. <aczerniak@taftlaw.com>; Coogan, Paul J.
<PCoogan@taftlaw.com>
**Subject:** Cavelle v. CTA

Bob: In court before Magistrate Judge Fuentes, I explained to the Court that we intended to focus additional discovery
primarily on the new allegations arising from the emails that are Exhibit B of the First Amended Complaint.  You

indicated that the focus of the new claims with respect to Exhibit B was the language stating "he stole $6100 from the account that funds the holiday train."  I had mentioned that if Plaintiff was willing to agree not to make the other allegations presented in this email exchange between President Carter and Mr. Kruesi (i.e., heavy drinking, possible drug use, and an intervention) a basis of his claims, we could likely avoid much of the additional discovery on those elements.  Will Plaintiff agree not to assert those allegations as part of any of his claims? If that is the case, we could prepare a stipulation and avoid some further discovery on those matters.

Please let me know as soon as possible, as we are preparing written discovery in furtherance of the Court's order.  I also wanted to let you know that Mr. Keating has informed us he is not available for a deposition in February.  We are working to identify dates that will work for Mr. Keating in March.

Thank you,
Elizabeth