IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE CAVELLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 17-cv-5409 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| CHICAGO TRANSIT AUTHORITY, ) | |
| DORVAL R. CARTER, JR., individually, ) | |
| JOHN DOE 1, and JOHN DOE 2, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff George Cavelle sued the Chicago Transit Authority and several of its employees for several counts related to defamation and tortious interference with business and contractual relationships. Jennifer Sawka, Cavelle's ex-wife, has filed a motion to intervene [147] in this lawsuit, arguing that she is entitled to a majority share of any settlement or award that Cavelle receives from this case and that she cannot protect her interests if she is not a party to the case. For the reasons stated below, the motion to intervene [147] is granted in part (as to permissive intervention) and denied in part (as to intervention of right) and the permissive intervention is subject to the limitations set out below.

**I.    Background**

In August 2015, George Cavelle resigned from his position as Chief Transportation Operations Officer at the Chicago Transit Authority ("CTA"). He subsequently pursued at job at King County Metro Transit in Seattle, Washington, but ultimately did not receive it. On July 24, 2017, he filed a complaint [1] (later amended, see [102]) against the CTA, its president, and certain unknown employees, alleging that they had interfered with his attempt to get the job in Seattle.

He also brought several defamation-based claims, attempting to hold Defendants responsible for allegedly harmful statements. Additionally, the parties submitted an agreed confidentiality order, which the Court entered on January 18, 2018 [24].

Meanwhile, Cavelle's wife, Sawka, filed a petition for dissolution of marriage in the Circuit Court of Cook County on April 13, 2016. [147, at 2.] On August 22, 2017, the Circuit Court entered a Judgment for Dissolution of Marriage ("Judgment") which incorporated the parties' Marital Settlement Agreement ("MSA"). *Id.* Among other things, the MSA contained a representation and warranty that each party disclosed therein all assets in which he or she, respectively, held an interest. The MSA further provided that, if one party failed to disclose an asset in the MSA, the other would be entitled to a majority share of that asset, either 60% if the failure to disclose was inadvertent, or 75% if it was intentional. *Id.* at 3.

Cavelle did not disclose this lawsuit as an asset in the MSA. Sawka did not know about the case at the time Cavelle filed it, but she had learned about it by August 13, 2018, the date on which she filed in state court a Petition to Enforce or, Alternatively, to Modify Judgment, seeking to confirm her ownership interest in this case. See [184, at 2.] Sawka subsequently filed a motion for partial summary judgment, and on December 10, 2019, the state court granted that motion, ruling as follows: (i) "there is no genuine issue of material fact that George Cavelle's 'defamation action' (Case No. 17-cv-5409) currently pending in the Northern District of Illinois, is marital property as a matter of law"; and (ii) "George Cavelle should have disclosed the defamation action pursuant to Section 6.E.(1) of the Marital Settlement Agreement, as a matter of law." [147-3, at 1-2.] The state court also determined that a genuine issue of material fact existed as to whether Cavelle intentionally or unintentionally failed to disclose this case as an asset and denied Sawka's motion for summary judgment on that issue.

On February 29, 2020, Sawka filed a motion [147] to intervene "for limited purposes" in this case. She seeks intervention as of right under Federal Rule of Civil Procedure ("Rule") 24(a)(2), or alternatively, permissive intervention under Rule 24(b). As the holder of the majority interest in anything Cavelle recovers in the suit, Sawka argues that she "should be entitled to participate in this action on the same terms as George" and "should have access to all transcripts, pleadings, discovery, reports, and all documents produced or generated in connection with this matter." [147, at 2.] She worries that, if she is not permitted to intervene as of right, any settlement of the matter is likely to be confidential, "could be structured to deprive her of her full interest" (though she does not explain how), which might force her to litigate her rights in a separate action. [147, at 7.] Should that position fail, Sawka argues for permissive intervention so that she can seek modification of the confidentiality order and access discovery materials in this case. [147, at 9.] Defendants oppose Sawka's intervention.

## II. Legal Standard

Federal Rule of Civil Procedure 24 provides for two types of intervention: intervention as of right (see Rule 24(a)) and permissive intervention (see Rule 24(b)). The rule for intervention as of right provides that, "[o]n timely motion, the court must permit anyone to intervene who * * * claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). As the Seventh Circuit has explained, this rule imposes four requirements for intervention of right: "(1) timeliness, (2) an interest relating to the subject matter of the main action, (3) at least potential impairment of that interest if the action is resolved without the intervenor, and (4) lack of adequate representation by existing parties." *Reid L. v. Illinois State Bd. of Educ.*, 289

3

F.3d 1009, 1017 (7th Cir. 2002); see also *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007). "The burden is on the party seeking to intervene of right to show that all four criteria are met." *Reid L.*, 289 F.3d at 1017. "A failure to establish any of these elements is grounds to deny the petition." *Ligas*, 478 F.3d at 773.

If intervention as of right is not warranted, the Court may, "[o]n timely motion, * * * permit anyone to intervene who * * * has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "A court may allow intervention under Rule 24(b) only if: (1) a claim or defense of the would-be intervenor has 'a question of law or fact in common' with the main action; and (2) the intervention request is timely." *Kostovetsky v. Ambit Energy Holdings, LLC*, 242 F. Supp. 3d 708, 728 (N.D. Ill. 2017) (quoting *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000)). "Permissive intervention under Rule 24(b) is wholly discretionary and will be reversed only for abuse of discretion." *Sokaogon Chippewa Cmty.*, 214 F.3d at 949.

**III. Analysis**

    **A. Intervention as of Right**

A party may intervene as of right when (1) the motion to intervene is timely filed; (2) the proposed intervenors possess an interest related to the subject matter of the action; (3) disposition of the action threatens to impair that interest; and (4) the named parties inadequately represent that interest. *United States v. Segal*, 938 F.3d 898, 908 (7th Cir. 2019) (quotation omitted). The party seeking intervention has the burden of establishing each of these elements. *United States v. BDO Seidman,* 337 F.3d 802, 808 (7th Cir. 2003). The failure to establish even one element requires denial of an intervention motion. *American National Bank & Trust Co. of Chicago v. City of Chicago,* 865 F.2d 144, 148 (7th Cir. 1989); *S.E.C. v. Heartland Group, Inc.,* 2003 WL 1089366

(N.D. Ill. 2003). Though Sawka meets three of the requirements, she has not shown that her interest will be impaired if she does not intervene.

### 1. Timeliness

The timeliness requirement of Rule 24(a)(2) is a flexible one and is determined by considering the totality of the circumstances, leaving much to the sound discretion of the Court. *United States Commodity Futures Trading Comm'n v. Wilkinson*, 2016 WL 7014066, at *2 (N.D. Ill. Nov. 30, 2016), citing *Shea v. Angulo,* 19 F.3d 343, 348-49 (7th Cir. 1994). A prospective intervenor should file "as soon as * * * [it] knows or has reason to know that [its] interests might be adversely affected by the outcome of the litigation he must move promptly to intervene." *Sokaogon Chippewa Community*, 214 F.3d at 949 (quotation omitted). In determining whether a motion to intervene is timely, courts consider four factors: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; [and] (4) any other unusual circumstances." *Heartwood, Inc. v. U.S. Forest Service, Inc.,* 316 F.3d 694, 701 (7th Cir. 2003).

Defendants argue that Sawka's motion to intervene is untimely. According to Defendants, she knew at least by August 13, 2018—when she filed a motion to modify the divorce judgment—that her interests could be affected by the outcome in this suit, but she did not file a motion to intervene in this case until February 2020. Sawka counters that, before she could intervene in this federal suit, she needed to establish her interest in its outcome through state court litigation regarding her divorce judgment, which took until December 10, 2019. She also points out that if she'd moved to intervene before she received the state court order, Defendants could have argued that her petition was premature.

5

Considering all of the facts and circumstances, the Court does not find the motion to intervene untimely. Sawka has not slept on her rights or caused a prejudicial delay in litigation, either in state court or in this Court. And she is right that, had she filed to intervene before receiving a state court order on her interest in any award to Cavelle in this suit, a party opposing her intervention could have argued that her motion was premature. Frankly, it is to everyone's benefit, including the Court's, that Sawka's interest is clearly defined by the state court order. Perhaps she should have moved to intervene as soon as she received the state court order, which would have put her filing date at December 11, 2019, rather than February 29, 2020. But it is not clear what prejudice, if any, Defendants faced from the intervening two months. This case is unlike the authority Defendants point to, *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, in which the proposed intervenor sought to "to contest an issue already thoroughly contested before [the] Magistrate Judge" which "would reinvigorate a case that should have been resolved years ago." 2011 WL 65963, at *3 (N.D. Ill. Jan. 10, 2011). In contrast, this matter is ongoing and in the midst of motions practice, and Sawka seeks intervention to address future concerns, not past issues that the Court has already addressed. And while Defendants did suffer delay caused by Cavelle's and his counsel's allegations of witness tampering, the remedy for that conduct is sanctions, which Defendants were awarded (see [138]), not barring Sawka from intervention. In the Court's judgment, Sawka's motion is not untimely.

## 2. *Parties' Representation of Sawka's Interest*

To be allowed to intervene, Sawka must establish that the named parties in this case will not adequately represent her interests. Defendants argue that her ex-husband adequately represents her interests, because he too wants to maximize any award or settlement amount that he receives. [184, at 8.]. That may be true as far is it goes, but it does not address the full extent of

6

Sawka's interest. She also wants to obtain her share of any recovery, and the Court is not persuaded that she can rely on her ex-husband on that issue. Cavelle did not disclose this suit to Sawka in their divorce case, and in subsequent state court proceedings, Cavelle contested Sawka's interest in this suit.[1] Whether any of those positions were correct or incorrect was for the state court to decide, and this Court has no opinions on those questions. The point is simply that Cavelle's and Sawka's interests are not fully aligned, so Sawka cannot count on Cavelle to represent her interests in this matter.

### 3. Interest

For Rule 24(a)(2) purposes, the "interest" asserted must be "direct and concrete" and "accorded some degree of legal protection." *Diamond v. Charles,* 476 U.S. 54, 75 (1986). It must be more that a "'betting' interest." *Security Insurance. Co. of Hartford v. Schipporeit, Inc.,* 69 F.3d 1377, 1380 (7th Cir. 1995). It cannot be remote, speculative, or conditional. *U.S. S.E.C. v. Benger*, 2010 WL 724416, at *1 (N.D. Ill. Feb. 23, 2010). Although Rule 24 does not define "interest," a mere "economic interest" (such as being a creditor of one of the parties) is insufficient. *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009). Additionally, in order to have an interest related to the subject matter of the action, the movant must "be someone whom the law on which his claim is founded was intended to protect." *Id.* at 572. Whether an applicant has an interest

---

[1] These facts distinguish this case from *Benger*, on which Defendants rely. See [184, at 8-9, citing *SEC v. Benger*, 2010 WL 724416, at *1 (N.D. Ill. Feb. 23, 2010). In *Benger*, a wife who had initiated divorce proceedings sought to intervene in an action SEC brought against her soon-to-be-ex-husband in order to protect a "claimed possible interest" in assets that the SEC had frozen. The wife's argument that her husband would not adequately represent her interests because they were in a "contentious divorce did not persuade the court. *Id.* at *5. But in this case, there is not just a general worry about adequacy of representation based on the breakdown of a marriage. Rather, Sawka identified specific reasons—namely, that Cavelle did not disclose this suit in the divorce proceedings, and in subsequent litigation contested Sawka's claim to a share of any recovery—that persuade the Court that their interests are not aligned.

sufficient to warrant intervention as a matter of right is a highly fact-specific determination, making comparison to other cases of limited value. *Security Ins. Co. of Hartford,* 69 F.3d at 1380.

Here, Sawka has more than a mere "betting interest"—she has an order from a state court confirming that Cavelle's case is marital property, to which she has a claim for a majority share. That's a "direct and concrete" interest. *Diamond,* 476 U.S. at 75. In similar cases, courts have found a sufficient interest for purposes of intervention. See, *e.g.*, *Geiger v. Foley Hoag LLP Retirement Plan*, 521 F.3d 60, 65 (1st Cir. 2008) (intervention permitted where the intervenor had already obtained certain rights through a divorce decree and intervention was necessary to protect those judicially established rights); *S.E.C. v. Flight Transp. Corp.*, 699 F.2d 943, 949 (8th Cir. 1983) (wife of a defendant had interest sufficient to support intervention as of right in an SEC enforcement proceeding because Minnesota law on marital property made it "virtually certain [that the wife would] become entitled to some of those assets upon division of the property"); see also *Bear, Stearns & Co. v. Sitlington*, 20 F. App'x 551, 551 (7th Cir. 2001) ("In the early stages of the case, Mrs. Sitlington was allowed to intervene on certain issues because she enjoyed joint ownership of the couple's real property, which was about to be used to satisfy the judgment."). The Court is persuaded that Sawka has an interest in the outcome of this case sufficient for Rule 24(a)(2) purposes.

Defendants' attempt to frame Sawka as a mere creditor are unavailing. She does not have a claim to *a* sum of money from a Cavelle that he could satisfy today by turning over cash derived from any number of sources, so she is unlike the "holder of an unsatisfied judgment," who has a purely practical, economic interest in collecting its debt. *Thompson v. United States*, 268 F.R.D. 319, 320 (N.D. Ill. 2010). Rather, because Cavelle's claim in *this* lawsuit is marital property, she has a right to a majority share of any award in the suit. Nor does she seek to protect *potential*

8

marital assets, as in *Benger*, 2010 WL 724416, at *2 (N.D. Ill. Feb. 23, 2010) (wife seeking divorce had insufficient interest in frozen assets to intervene in SEC fraud action against her husband because she did not show that the frozen assets were lawfully derived or were marital assets). Sawka's interest, as set out in the MSA and confirmed by a state court order, is in any recovery Cavelle receives from this suit, which satisfies the interest requirement of Rule 24(a)(2).

### 4. *Impairment of the Interest*

The existence of "impairment" depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding. *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982); *Shea*, 19 F.3d at 347. Thus, where the disposition of a suit will not bar a proposed intervenor from asserting his or her rights in a separate action, the "impairment" prong of 24(a) typically is not met. See *Shea,* 19 F.3d at 347 ("[W]hether or not Shea recovers from FCA, Butzen remains free to initiate his own suit against Shea to recover his share of the alleged partnership earnings. The district court correctly held, therefore, that * * * there is no potential impairment of Butzen's interest as a result of the disposition of the Shea–FCA action.").

Closing this case will not stop Sawka from asserting her rights in a state court action related to her divorce judgment or MSA. In fact, she's already initiated one suit in that vein, which generated the December 10, 2019 order on which her motion to intervene relies, and if Cavelle receives any money as a result of this case, Sawka could pursue her share of it through the state court. "There is no contention, nor could there be, that the state court procedures in divorce cases are inadequate to require spouses to divulge all assets, however derived and wherever hidden. Nor is there any contention that in divorce cases, as in all others, obedience to lawful court orders can be achieved by a finding of civil contempt and incarceration until the contemnor has complied

with the order." *Benger*, 2010 WL 724416, at *3 (N.D. Ill. Feb. 23, 2010), citing *In re Marriage of Logston*, 469 N.E.2d 167, 177 (1984); *In re Marriage of Sharp,* 860 N.E.2d 539, 548 (2d Dist. 2006). Sawka expresses concern that any settlement agreement would be kept confidential or that the protective order would bar her from receiving it. But the protective order itself acknowledges that it does not allow a party to withhold documents sought by a subpoena or court order (see [24, at 8-9]), and even a confidentiality provision in a settlement agreement would not stop Sawka from obtaining the agreement in discovery. *Cordeck Sales, Inc. v. Constr. Sys., Inc.*, 917 N.E.2d 536, 544 (2009) (agreement to keep terms of settlement confidential could not overcome a valid discovery request). With state court process at her disposal (and already used to significant effect), Sawka cannot show that her interests in this case will be sufficiently impaired to warrant intervention as of right. Because she has not met her burden of showing impairment, the court denies her motion for intervention as of right under Rule 24(a).

### B.  Permissive Intervention

As an alternative to intervention as of right, Sawka seeks permissive intervention in order to "challeng[e] the Confidentiality order" so that she can access discovery materials and participate in at least some aspects of the case. [188, at 11.] Permissive intervention under Rule 24(b) is "wholly discretionary." *Sokaogon Chippewa Community,* 214 F.3d at 949; *Shea,* 19 F.3d at 346 n. 2. Rule 24(b) provides, in pertinent part, that "[u]pon timely application anyone may be permitted to intervene in an action * * * when an applicant's claim or defense and the main action have a question of law or fact in common * * *. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R.Civ.P. 24(b). The proposed intervenor bears the burden of demonstrating a common question of law or fact with the main action. See, *e.g., Security Ins. Co. of Hartford,* 69

10

F.3d at 1381 ("The proposed intervenor must demonstrate that there is (1) a common question of law or fact* * *."). The Rule requires the court to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3), but otherwise does not cabin the district court's discretion. *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 803 (7th Cir. 2019).

Here, Sawka's motion is timely, for the same reasons explained above, so the question is whether she has established that her claim has a question of law or fact in common with the underlying suit.

### 1. *Common Question of Law or Fact*

The Seventh Circuit has previously determined that "confidentiality is—in the language of Rule 24(b)(2)—a 'question of law * * * in common'" between parties to a case and a proposed intervenor. *Jessup v. Luther*, 227 F.3d 993, 998–99 (7th Cir. 2000). Although the interest asserted by someone challenging a protective order is not a "claim" or "defense"—the wording Rule 24(b)(1)(B) uses—the Seventh Circuit considers the language of the rule "broad enough to encompass a third-party challenge to a protective order." *Bond v. Utreras*, 585 F.3d 1061, 1070 (7th Cir. 2009) (citing *Jessup*, 227 F.3d at 998; *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 896 (7th Cir. 1994).

Sawka's motion for permissive intervention does seek to challenge the protective order, at least with respect to her, giving her a question of law in common with the parties to the case. She also seeks to do other things, like accessing documents produced in discovery. The document issue derives at least in part from the protective order; to protect her rights in any award or settlement in Cavelle's favor, Sawka may need documents covered by the protective order. So that issue also raises common questions of law. On those points, the Court is satisfied that Sawka

11

has met the requirements of Rule 24(b) and should be permitted to intervene, but not quite to the extent she seeks. Sawka's requests are broad and go beyond simply challenging the protective order and seeking documents that may be marked "confidential." In fact, they go beyond the narrow interest she has in the case, which is ensuring that she receives her share of any award or settlement that goes to Cavelle. Sawka will be permitted to intervene under Rule 24(b), but the Court will limit her intervention to activities related to her interest in the case, as discussed below.

2. *Limitations on Intervention*

The Court has authority to "place conditions on the scope of permissive intervention." *Planned Parenthood of Wisconsin, Inc.*, 942 F.3d at 803; see also *In re Discovery Zone Sec. Litig.*, 181 F.R.D. 582, 601 (N.D. Ill. 1998) ("It is axiomatic that courts may put limitations on a party's ability to intervene permissively under Rule 24(b)(2)."); *United States v. Am. Inst. of Real Estate Appraisers of Nat. Ass'n of Realtors*, 442 F. Supp. 1072, 1083 (N.D. Ill. 1977) ("The district court's discretion under Rule 24(b), Fed.R.Civ.P., includes the latitude to limit intervention to particular issues.") (citing *Van Hoomissen v. Xerox Corp.*, 497 F.2d 180, 181 (9th Cir. 1974); *Ionian Shipping Co. v. British Law Ins. Co.*, 426 F.2d 186, 191-92 (2d Cir. 1970)).

Sawka's intervention will be limited to what is needed to protect her interest in any award or settlement that Cavelle may receive. She may access materials produced in discovery that are relevant to the fact or amount of any award or settlement, or the structure of any settlement, or any such materials generated after the close of discovery that are created or received by Cavelle. She may also participate in court proceedings for the limited purpose of protecting her interest in any award or settlement, and she may participate in settlement discussions for the limited purpose of protecting her interest in any settlement. Additionally, Sawka has not asked for, and the Court does not grant her, any right to make, accept, or reject a settlement offer.

This is narrower relief than what Sawka sought, even in her request for permissive intervention. She wanted access to essentially *all* discovery in the case. See [188, at 12 ("she should be entitled to review and copy documents, all of the deposition transcripts, interrogatory responses, responses to requests for admission, expert reports, and other discovery documents produced or otherwise generated in [this case]")]. She wants all this information not to *protect* her interest in this case, but to *maximize* it; she intends to use it to show that Cavelle's non-disclosure of the federal suit was intentional rather than unintentional, which would mean she is entitled to 75% of any proceeds, rather than 60%. See [188, at 12-13.] Discovery on the merits of Cavelle's tortious interference and defamation counts may or may not be relevant to that issue, but the place to hash that out is state court. *Benger*, 2010 WL 724416, at *4 (N.D. Ill. Feb. 23, 2010) ("The place for Ms. Benger to discover her husband's 'assets' and their origin is in the state court, not an SEC enforcement action."). Such broad requests are not necessary, or even relevant, to protecting Sawka's interest in this case—*i.e.* obtaining her rightful portion, whatever that may be, of any award to Cavelle—so the Court considers them outside the scope of the permitted intervention.

These limits ensure that Sawka's intervention will not unduly delay the litigation or prejudice the parties. Whatever documents Sawka is owed will likely be a small subset of what has already been produced, as the Court expects that most discovery so far has concentrated on the merits, rather than the value, of the case. Furthermore, the Court expects that the parties will have to make few accommodations for Sawka going forward, given the narrow scope of her participation. As a result, intervention will not unduly slow the progress of the case or inconvenience the parties.

The Court directs the parties and Sawka to submit a joint status report on or before December 7, 2020 updating the Court on whether Sawka should be brought under the existing

protective order or whether the protective order should be modified to accommodate her intervention. If the latter, the parties and Sawka are directed to submit a proposed amended protective order by December 14, 2020.

**IV.     Conclusion**

For the reasons set forth above, the motion to intervene [147] is granted in part (as to permissive intervention) and denied in part (as to intervention of right), subject to the limitations described in this order.

Date: November 12, 2020         _____
                                 Robert M. Dow, Jr.
                                 United States District Judge